MERCHANTS MUTUAL INSURANCE COMPANY, as Subrogee of STATE UTILITIES, INC., Appellant, v SALVATORE ARZILLO, Respondent.

Second Department, January 23, 1984

APPEARANCES OF COUNSEL

*Gwertzman, Pfeffer, Toker & Lefkowitz (Ellen Lefkowitz* of counsel), for appellant.

### OPINION OF THE COURT

NIEHOFF, J.

On June 18, 1978 a fire occurred at the premises of State Utilities, Inc., in Lindenhurst, New York, causing serious damage to the building and its contents. The present action is brought by the plaintiff, Merchants Mutual Insurance Company, as subrogee of State Utilities, Inc., to recover the sum of $49,222.22 which Merchants Mutual expended for coverage of the loss under a fire insurance policy on the damaged premises.

Following the fire the defendant Salvatore Arzillo was indicted for arson in the third degree, the People claiming that he had been responsible for the fire. After a number of

court appearances, the defendant entered a *Serrano*-type plea of guilty (*People v Serrano,* 15 NY2d 304) to a reduced charge of arson in the fourth degree. In the instant action for recovery of the amount of the fire loss, Merchants Mutual alleges that "defendant recklessly and wantonly damaged said building belonging to plaintiff's subrogor when he intentionally caused a fire to start which caused great damage".

The issue to be resolved on this appeal is whether the defendant's plea of guilty to arson in the fourth degree for the very same incident which is the subject of this civil lawsuit collaterally estops the defendant from litigating the question of willful responsibility for the fire or whether, by entering a *Serrano* plea, at which time he claimed to have been framed, and by continuing to protest his innocence thereafter when he was sentenced, defendant is entitled to a trial on the issue of his legal responsibility to pay money for damages for the fire loss.

The appeal comes to us as a consequence of Special Term's denying Merchant Mutual's motion for summary judgment. In denying the motion, Special Term wrote: "Defendant's prior plea to [*sic*] guilty of arson in the fourth degree before Acting County Court Judge Best on January 14, 1981 in the County Court of Suffolk represents an admission and is receivable in evidence in this civil action against him (Fisch on NY Evidence [2 ed] Sec. 803; *Ando* v *Woodberry,* 8 NY 2d 165, 167). While defendant may not relitigate the issue of his guilt, he may offer proof relevant to character of crime committed (*Matter of Levy,* 37 NY 2d 279) and is entitled to the opportunity to explain it (*Chamberlain* v *Iba,* 181 NY 486, 490)."

For reasons set forth below, we conclude that the doctrine of collateral estoppel applies to defendant's *Serrano* plea of guilty and that the plaintiff is entitled to summary judgment on the question of defendant's liability for civil money damages.

The essential facts are as follows:

By Suffolk County indictment number 2587/79 the defendant, Salvatore Arzillo, was charged with violating section 150.10 of the Penal Law, arson in the third degree (a class C felony). On January 14, 1981, after some 15 court

appearances, the defendant withdrew his previously entered plea of not guilty to the charge of arson in the third degree and interposed a plea of guilty to arson in the fourth degree, a class E felony (Penal Law, § 150.05). Before the County Court accepted defendant's plea of guilty to the reduced charge, the County Court conducted a detailed allocution concerning the voluntariness of the plea.

After noting the defendant's desire to plead guilty to arson in the fourth degree, the court indicated its intention to sentence the defendant to a period of probation, inquired if any promises or threats were made to the defendant, advised the defendant of his rights, including the burden on the People to prove the case beyond a reasonable doubt, the defendant's right to call witnesses on his own behalf and cross-examine the People's witnesses, and defendant's right to counsel, admonished the defendant that his guilty plea constituted a waiver of those rights, and informed defendant of various sentencing alternatives. After questioning the defendant the court found as follows:

THE COURT: The Court finds you alert and intelligent, and you understand the nature of the charges against you, and appreciate the consequences of the guilty plea. The Court finds you understand your rights, and are willing to give them up by a plea of guilty at this time.

The Court finds you understand the facts the district attorney must prove to establish your guilt, and these facts are — knowing all this, as to the charge of Arson in the Fourth Degree, a Class E felony, how do you plead?

THE DEFENDANT: Guilty.

After so finding, the court asked Salvatore Arzillo about the incident in question. In answer to the query the defendant stated that there was an ongoing feud between him and the proprietor of State Utilities, Inc., and that he had been framed. Understandably concerned by the defendant's statements, the County Court Judge pursued this line of inquiry and painstakingly explained all of the ramifications of a guilty plea to Mr. Arzillo. During that discussion Mr. Arzillo's attorney stated that the "purpose of this plea is in the form of the guidelines of the *Seroano* [*sic*] plea, that his Honor and the district attorney and the Court is familiar with", after which the prosecutor outlined the People's case for the court as follows:

I would like to outline for the Court, the proof that the People would adduce at trial, were this case to go to trial, and indicate to the Court that we would prove that a fire happened at State Utilities Corporation, on the 18th day of June, 1978, at 290 West Hoffman Avenue, Lindenhurst.

We would also prove there was a long outstanding history of personal animosity between the owner of the property that the fire occurred on, and Mr. Arzillo. So we'd be able to establish a motive.

We would also be able to produce a witness, a Kevin O'Reilly, known to Mr. Arzillo, who would testify that Mr. Arzillo discussed with him, prior to the fire, his desire to have a fire occur at this particular location, and that Mr. O'Reilly would testify that Mr. Arzillo paid him to, in fact, see that a fire occurred at this particular location.

Mr. O'Reilly received some two hundred dollars from Mr. Arzillo over a period of some two weeks, in installments. He, in fact — Mr. O'Reilly had someone else start the fire which occurred on the 18th day of June, 1978, and that members of the Suffolk County Arson Squad would testify that, as a result of information they received some few days after the fire, their investigation showed that Mr. O'Reilly's version of how, in fact, the fire was started and occurred, at the location on the 18th, was corroborating; in fact, that a certain brick was located at the property and it was thrown — it was located in the area where Mr. O'Reilly indicated a brick was thrown. Gasoline was poured through an office window, and the fire was started in that fashion.

It's our feeling that were we pressed to try this case, we would be able to prove, beyond a reasonable doubt, that Mr. Arzillo, in fact, was the moving force and the person who caused this fire to occur.

However, as in any case, certainty is not something's [sic] positive, so we've decided to offer Mr. Arzillo this plea under these particular circumstances.

## After continued colloquy and a further claim by defendant that he had been framed, the following occurred:

THE COURT: Sir, the more you tell me you were framed, the more I might be inclined not to accept your plea. Do you understand that? I don't want to have somebody tell me they want me to accept their plea, and with the same breath, tell me they were framed.

The record is inconsistent in that regard. Do you want me to accept your plea?

THE DEFENDANT: Yes.

THE COURT: Is that your final decision, sir? I don't want you to now say that any injustice was done to you in this Court. Do you understand that, sir?

THE DEFENDANT: Yes.

THE COURT: I don't want you to say that somebody framed you, and you can maintain your innocence. But I don't want you to say, in the second breath, that you were framed. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do I make my point to you, sir?

THE DEFENDANT: Yes, your Honor.

THE COURT: You're asking me to accept this plea?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. I will accept your plea.

I will accept your plea on the basis that, if you did stand trial, you may well be found guilty of the higher charge and you may well have to face greater punishment. This is what you are escaping. Is that right?

THE DEFENDANT: Yes.

Having thus satisfied itself as to the voluntariness of Mr. Arzillo's plea the court directed the clerk to record the plea on the record. During that portion of the proceeding the following transpired:

THE CLERK: Are you pleading guilty of your own free will?

THE DEFENDANT: I am.

THE CLERK: Do you know that your plea of guilty is an admission that you committed the crime to which you now plead guilty?

THE DEFENDANT: Yes.

MR. GIORGINI [Defense Counsel]: The last question that was asked is yes, sir, with the stipulation that he is maintaining his innocence, and entering the Seroano [sic] plea.

THE COURT: The record is clear as to what his position is. But he must understand that he's pleading guilty to an Arson in the Fourth Degree.

MR. GIROGINI [sic]: He understands that, your Honor.

THE COURT: That means guilty. It doesn't mean anything else.

Mr. Arzillo, you just signed this paper. It was filled out by your attorney?

THE DEFENDANT: Yes, your Honor.

THE COURT: You were asked those questions and you gave those answers?

THE DEFENDANT: Yes, your Honor.

THE COURT: Are each of them answered correctly?

THE DEFENDANT: Yes, your Honor.

THE COURT: And they are — they reflect accurately your answers to these questions?

THE DEFENDANT: Yes, your Honor.

THE COURT: Is it still your desire to make this disposition of this case?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you want to change your mind, sir?

THE DEFENDANT: No, your Honor.

THE COURT: This is what you want to do?

THE DEFENDANT: Yes, your Honor.

From the foregoing it can be seen that the County Court Judge became somewhat alarmed when the defendant made the claim that he had been framed and that the Judge's concern led him to take considerable care to explain to the defendant the ramifications of a guilty plea. The minutes of the plea disclose that when the Judge completed his colloquy with the defendant, the clerk specifically informed the defendant that his plea of guilty was an admission that he had committed the crime to which he was pleading guilty and the Judge then said "That means guilty. It doesn't mean anything else". Moreover, before the plea was accepted, the Assistant District Attorney outlined his case against the defendant in an effort to satisfy the court and the defendant that the case was a strong one.

On March 13, 1981, subsequent to taking of the plea, the defendant appeared before the County Court for sentencing. The following transpired:

THE COURT: All right. Mr. Arzillo, you were before the Court a month or so ago and entered a plea of guilty to the charge of Arson in the Fourth Degree. Is that right, sir?

THE DEFENDANT: Right, your Honor.

THE COURT: Is that still your plea, sir?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you have any idea about changing your mind at all, sir?

THE DEFENDANT: No, your Honor.

THE COURT: The matter was adjourned to today's date for sentencing.

THE DEFENDANT: Right, your Honor.

THE COURT: You have a right to address the Court before sentencing, sir. Do you have anything to say to the Court at this time?

THE DEFENDANT: I don't understand that one.

THE COURT: Do you want to say anything to the Court before I pronounce sentence?

THE DEFENDANT: No, your Honor.

As noted above, the complaint in this action alleges that the defendant "recklessly and wantonly damaged said building belonging to plaintiff's subrogor when he intentionally caused a fire to start which caused great damage". The answer of the defendant admits his home address and denies each of the other allegations of the complaint.

In support of its motion for summary judgment, plaintiff submitted an attorney's affirmation, as well as the minutes of the guilty plea and the minutes of the sentencing proceeding, whereby, as previously noted, the defendant pleaded guilty to the reduced charge of arson in the fourth degree and was sentenced to five years' probation.

The defendant opposed the summary judgment motion, stating that (1) he did not set the fire to the building or conspire to have it set; (2) his plea of guilty was in the nature of a *Serrano* or *Alford* plea (*People v Serrano,* 15 NY2d 304, *supra; North Carolina v Alford,* 400 US 25), and that he never admitted committing the acts alleged in the indictment; and (3) the question of who started the fire was never litigated.

As we have already said, we conclude that summary judgment on the issue of liability should have been granted to plaintiff.

In the prior criminal proceeding Salvatore Arzillo pleaded guilty to arson in the fourth degree, a felony. Section 150.05 of the Penal Law provides that a person is guilty of fourth degree arson when he recklessly damages a building in which some other person had a possessory or proprietary interest by intentionally starting a fire or causing an explosion. The record before us proves beyond doubt that Mr. Arzillo, after consulting with and obtaining the advice of his attorney, understood both the meaning and the consequences of a criminal conviction pursuant to his plea of guilty. It was made clear to him that his guilty plea resulted in a valid, binding and final judgment of conviction in the criminal proceeding. The doctrine of issue preclusion as it has developed in this State mandates the

holding that Arzillo's guilty plea in the criminal action conclusively establishes his commission of the elements of the crime for the purposes of the instant subrogation action.

For many years the law in this State was that a conviction in a criminal case was prima facie evidence of the underlying facts, or *"presumptive proof* of the commission of the crime" in a subsequent civil suit, but that it was not conclusive proof of its underlying facts in such suit (see *Schindler v Royal Ins. Co.,* 258 NY 310, 314). However, noting that "[i]n the 40 years since we decided *Schindler* we have greatly expanded the application of collateral estoppel", the Court of Appeals, in the case of *S. T. Grand, Inc. v City of New York* (32 NY2d 300, 304-305), declared that the reasoning of *Schindler* (*supra*) and its progeny was no longer viable and held that a criminal conviction after trial is conclusive proof of its underlying facts in a subsequent civil action. Judge JASEN writing for the court said:

"There can be little doubt that stability of judgments and expedition of trials are served with a resulting increase in the efficiency of the judicial process in finally disposing of disputes, and no injustice is committed when criminal defendants are estopped from relitigating issues determined in conformity with these safeguards.

"Thus, we hold that the criminal conviction is conclusive proof of appellant's bribery".

The principles underlying the rule that prior determinations made in criminal cases are to be given collateral estoppel effect in subsequent civil cases were stated succinctly by Judge MEYER in his dissenting opinion in *Gilberg v Barbieri* (53 NY2d 285, 295): "*S. T. Grand, Inc. v City of New York* (32 NY2d 300) establishes that the rule of issue preclusion applies where the defendant in a prior criminal proceeding is defendant in a subsequent civil action involving the same issue and that the collateral estoppel rules enunciated in *Schwartz v Public Administrator of County of Bronx* (24 NY2d 65) apply as well when the prior proceeding is criminal as when it is civil. The *Schwartz* case makes clear that the criteria are two: 'an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and,

second, there must have been a full and fair opportunity to contest the decision now said to be controlling' (24 NY2d, at p 71). *Schwartz* and *B. R. De Witt, Inc. v Hall* (19 NY2d 141) require that the opponent of collateral estoppel bear the burden of establishing that he did not have a full and fair opportunity, but impose on the proponent the burden of showing identicality of issue and that the issue was necessarily decided."

More recently Judge MEYER restated those principles in *Capital Tel. Co. v Pattersonville Tel. Co.* (56 NY2d 11, 17) as follows: "Collateral estoppel (or issue preclusion as is its more modern name, see *Matter of American Ins. Co. [Messinger — Aetna Cas. & Sur. Co.],* 43 NY2d 184, 189, n 2) applies to administrative as well as judicial proceedings (*Bernstein v Birch Wathen School,* 51 NY2d 932; *Matter of Evans v Monaghan,* 306 NY 312, 323-324; *United States v Utah Constr. Co.,* 384 US 394, 422; *Tipler v Du Pont de Nemours & Co.,* 443 F2d 125, 128; see Restatement, Judgments 2d [Tent Draft No. 7], § 131). Required for application of the doctrine in either type proceeding are that the issue as to which preclusion is sought be identical with the issue decided in the prior proceeding, that the issue have been necessarily decided in the prior proceeding, and that the litigant who will be held precluded in the present proceeding have had a full and fair opportunity to litigate the issue in the prior proceeding (*Gilberg v Barbieri,* 53 NY2d 285, 291; *Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65, 71; see *B. R. De Witt, Inc. v Hall,* 19 NY2d 141). The burden of establishing the first two elements rests upon the proponent of preclusion, but as to the lack of a full and fair opportunity to contest, the burden is on the opponent (*Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65, 73, *supra; B. R. De Witt, Inc. v Hall,* 19 NY2d 141, 148, *supra).*"

Manifestly, the issue in this civil action is identical with the issue presented in the prior criminal proceeding, namely, whether the defendant recklessly damaged the subject building by intentionally starting a fire. Thus, the first condition for the application of collateral estoppel, or issue preclusion, exists, to wit, identity of issue. Defendant does not argue otherwise. His contention is that his "plea of

guilty was in the nature of a *Serrano* or *Alford* plea whereby [he] pled guilty to minimize the risk of being found guilty after trial, but never admitting that [he] in any way, committed any of the acts alleged in connection with the fire" and that "the question of who started the fire was never litigated and no admissions were ever made with regard thereto".

Initially we note that ample authority exists for the general proposition that a guilty plea is equivalent to a conviction after trial for issue preclusion purposes and that a guilty plea precludes relitigation in a subsequent civil action of all issues necessarily determined by the conviction (see *Brennan v Mead,* 81 AD2d 821, affd 54 NY2d 811; *Alexander v City of Peekskill,* 80 AD2d 626; *Matter of Cumberland Pharmacy v Blum,* 69 AD2d 903; *Armchair Races v Caso,* 51 AD2d 565; *Prosise v Haring,* 667 F2d 1133, affd *sub nom. Haring v Prosise,* 462 US __, 103 S Ct 2368; *United States v $31,697.59 Cash,* 665 F2d 903, 906; *Fontneau v United States,* 654 F2d 8, 10; *Ivers v United States,* 581 F2d 1362, 1367; *Nathan v Tenna Corp.,* 560 F2d 761, 763-764; *Brazzel v Adams,* 493 F2d 489, 490; *Plunkett v Commissioner of Internal Revenue,* 465 F2d 299, 305; *Metros v United States Dist. Ct.,* 441 F2d 313, 316-317; *Ford v Burke,* 529 F Supp 373, 379-380; *Alsco-Harvard Fraud Litigation,* 523 F Supp 790, 801-804; *United States v Krietemeyer,* 506 F Supp 289; *Mayberry v Somner,* 480 F Supp 833, 838; *United States v Cripps,* 460 F Supp 969, 975; *United States v Grunstein & Sons Co.,* 127 F Supp 907, 911-912; Vestal, The *Restatement (Second) of Judgments:* A Modest Dissent, 66 Cornell L Rev 464, 478-483; Thau, Collateral Estoppel and the Reliability of Criminal Determinations: Theoretical, Practical, and Strategic Implications for Criminal and Civil Litigation, 70 Geo L J 1079, 1104-1112).

The article "Revisiting the Second *Restatement of Judgments:* Issue Preclusion and Related Problems" (66 Cornell L Rev 564, 578) sums it up: "The clearest case for such an estoppel is where a defendant pleads guilty to a substantial criminal charge and then seeks in civil litigation concerning the same transaction to assert that he did not commit the criminal act."

Indeed, our dissenting colleague acknowledges that our Court of Appeals "has apparently also held that the doctrine of collateral estoppel might be applicable in such a context [i.e., where there was a prior plea of guilty] (*Brennan* v *Mead,* 54 NY2d 811, *supra.*)"

Does the entry, then, of a *Serrano* or *Alford* guilty plea call for a different result and somehow make the criminal conviction based on such a plea immune from the doctrine of issue preclusion? Our answer is "no".

In *Matter of Cumberland Pharmacy v Blum,* (69 AD2d 903, *supra*) we said that "nothing in *People v Serrano* (15 NY 2d 304) or in *North Carolina v Alford* (400 US 25) suggests that if a guilty plea is accepted from a defendant who does not expressly admit to the underlying facts, the defendant is relieved of the civil consequences that flow from his plea." We held in that case that the defendant's "guilty plea binds [him] as strongly as any admission of the facts constituting the crime charged".

In *United States v $31,697.59 Cash* (*supra,* p 906), the United States Court of Appeals for the Ninth Circuit held that collateral estoppel effect was to be given to the claimant's guilty plea regardless of the fact that the record revealed no factual basis for the plea. In so concluding, that court emphasized the underlying policy of providing, for the sake of the parties and the judicial system, finality of judgments and an end to interminable litigation. The court quoted the following language from Justice STEVENS' opinion in *United States v Timmreck* (441 US 780, 784): "[T]he concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas. 'Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice.'"

Certainly, it cannot be said that there has been an actual litigation of those issues representing the essential elements of the crime in those situations where a defendant enters a plea of guilty. However, although not actually litigated as such, the issues have necessarily been judicially determined by the plea, so that the criminal defendant is estopped to contest them in subsequent civil litiga-

tion. This must be said to be true even in those instances where a *Serrano* guilty plea is entered. The criminal defendant who enters such a plea is no less guilty than one who is convicted of the same charge by a jury or by a conventional guilty plea, and is subject to no less punishment. All that the *Serrano-Alford* line of cases require is that "before accepting a plea of guilt where the defendant's story does not square with the crime to which he is pleading, the court should take all precautions to assure that the defendant is aware of what he is doing." (*People v Serrano,* 15 NY2d 304, 310, *supra.*) In a word, a *Serrano* guilty plea is no less efficacious than a conviction after trial or an ordinary guilty plea and we perceive no sound reason for holding that the civil consequences flowing therefrom should be any less binding.

While it is true that in a *Serrano*-type guilty plea there is no admission, as such, of the facts justifying the conviction, it is manifest that a defendant entering such a guilty plea, like any defendant entering a conventional guilty plea, chooses, for reasons which he deems good and sufficient, not to avail himself of the opportunity to contest the facts underlying the charge against him. That of course is his prerogative. However, he must accept the consequences of his action. The fundamental principle underlying the concept of issue preclusion is that, in the public interest, a party shall not be heard a second time on issues previously determined and issues which, although not expressly litigated and determined, are included, comprehended and involved in the matter expressly litigated and determined. Hence, those who knowingly and voluntarily plead guilty to substantial criminal charges (the charge here is a felony) should not expect the courts to look behind convictions based on such pleas in order to relieve them from adverse civil consequences which may follow. As long as the guilty plea stands, the defendant is guilty and cannot be heard to say otherwise.

We note that our learned dissenting colleague places great reliance upon the County Court's statement to the effect that just who started the fire was never litigated in court. While it is true that such a statement appears in the record, it must be pointed out that such statement was

made during the course of discussion concerning the conditions of Mr. Arzillo's probation, some two months after the defendant had originally pleaded guilty to fourth degree arson and after Mr. Arzillo had reaffirmed his desire to plead guilty. In any event, that statement cannot be said to alter the fact that defendant stands convicted upon his own plea of guilty to arson in the fourth degree. The record of the criminal proceeding shows clearly that the defendant was aware of what he was doing when he knowingly and voluntarily entered such plea and he must be held bound both criminally and civilly by his plea.

Consequently, we hold that the defendant Salvatore Arzillo's plea of guilty to arson in connection with the fire which occurred on June 18, 1978 in the State Utilities, Inc., building is sufficient to estop the defendant from contesting the operative facts of the crime in this action. As a result, the plaintiff should have been granted summary judgment on the issue of liability. Accordingly, the order appealed from is reversed, with costs, the plaintiff is granted summary judgment on the issue of liability, and the matter is remitted to the Supreme Court, Nassau County, for an assessment of damages.

GIBBONS, J. (dissenting). The issue to be resolved is whether defendant should be precluded from litigating in this case the question of whether he "recklessly and wantonly damaged [the] building belonging to plaintiff's subrogor when he intentionally caused a fire to start which caused great damage". Specifically, we must decide whether defendant should be collaterally estopped from litigating this issue as framed in the complaint, because of a prior plea of guilty to arson in the fourth degree interposed by defendant, arising from a fire which occurred on June 18, 1978 in a building owned by plaintiff's insured and subrogor. If estoppel is to be applied, then summary judgment as to liability should be granted in plaintiff's favor. I conclude that, in the unique circumstances of this case, defendant's conviction in the criminal case should not be given conclusive effect in a subsequent civil suit.

For collateral estoppel to attach to a discrete issue, that issue must be identical in the pending case and in the prior proceeding, it must have necessarily been decided in the

prior proceeding, and the party to be estopped must have had a full and fair opportunity to litigate the issue in the prior proceeding (*Gilberg v Barbieri,* 53 NY2d 285, 291). In addition, the doctrine of collateral estoppel should never be applied mechanically. A case-by-case approach is necessary, keeping in mind the underlying purposes of the doctrine: to conserve the resources of courts and litigants, to promote the finality of judicial decisions, and to insure fairness to all parties (see *Gilbert v Barbieri, supra; Read v Sacco,* 49 AD2d 471, 473).

The burden is on the proponent of preclusion to prove "that the issue as to which preclusion is sought" is identical to the issue decided in the prior action and that that issue was necessarily decided in the prior case (*Capital Tel. Co. v Pattersonville Tel. Co.,* 56 NY2d 11, 17-18). Conversely, the opponent of preclusion bears the burden of proving that he did not have a full and fair opportunity to litigate the issue in the prior proceeding (*Capital Tel. Co. v Pattersonville Tel. Co., supra,* p 18).

I submit that in the case at bar, plaintiff has not met its burden of showing that the issue of defendant's responsibility for the fire was litigated in the prior criminal proceeding, that defendant has met his burden of showing that he did not have a full and fair opportunity to litigate that issue in the criminal case, and, finally, that it would be unfair to deprive defendant of the opportunity of now litigating this issue.

In support of its motion for summary judgment, plaintiff submitted the minutes of defendant's plea before the Suffolk County Court, dated January 14, 1981, and the sentencing minutes, dated March 13, 1981. These minutes reveal that defendant owns the property adjacent to the location where the fire occurred. Defendant and the owner of that property had a long history of animosity. According to defendant, the source of their problems is that his neighbor has "a lot of violations" on his property, and defendant reported these violations to the town authorities. The fight between the two neighbors over the violations had been going on for about two years. Defendant asserts that, after the fire occurred, which he says was

started by his neighbor, his neighbor "framed" him, "in order to keep [him] quiet".

The plea minutes reveal that, despite his protestations of innocence and belief that he was being framed, defendant nonetheless decided to enter a guilty plea because he did not wish to chance the possibility of a jail term were he to be convicted after trial, and because the attorney's fees for going to trial were prohibitive. The Assistant District Attorney made an offer of proof as to the substance of the case against defendant. He then represented to the court that his office was agreeing to the plea because, while it was his "feeling that * * * we would be able to prove, beyond a reasonable doubt, that Mr. Arzillo, in fact, was the moving force and the person who caused this fire to occur. However, as in any case, certainty is not something's [*sic*] positive".

In the face of defendant's claims of innocence, the court, before taking the plea, painstakingly inquired of both defendant and his attorney to ascertain the motives for the plea and to insure that defendant was aware of what he was doing. It also informed defendant that if the probation report was favorable, he would be placed on probation. The court accepted the plea "on the basis that, if you did stand trial, you may well be found guilty of the higher charge [arson in the third degree] and you may well have to face greater punishment". The court acknowledged that it was accepting the plea as a *Serrano* plea (*People v Serrano,* 15 NY2d 304). Later, at sentencing, the court, as a condition of probation, told defendant to stay away from his neighbor. The court continued: "You've had problems with this man, or his company, or whatever it is, over the years, and it's caused this problem. You say he started the fire. He says you started the fire. *I don't know who started the fire, sir, and we never did litigate it here in court,* but if there's [*sic*] any more problems * * * and if the violation of probation comes in * * * you can be sentenced" (emphasis supplied).

Up until 1973, the rule in New York had been that collateral estoppel would not be applied so as to give a conviction in a criminal case conclusive effect in a subsequent civil action. While proof of the criminal conviction

was allowed as prima facie evidence of the facts involved, such facts were not considered irrebuttably established (see *Schindler v Royal Ins. Co.,* 258 NY 310). In the case of *S. T. Grand, Inc. v City of New York* (32 NY2d 300), the Court of Appeals overruled past precedent and held that, in a civil case where a litigant had previously been convicted of a crime after a trial, collateral estoppel might, in appropriate circumstances, apply to preclude further litigation of issues necessarily decided in the criminal proceeding.

A bare nine months after handing down *S. T. Grand* (*supra*), the Court of Appeals referred to its holding in that case and noted: "emphasis, of course, was placed on the procedural safeguards accorded defendant and the high degree of proof required in order to convict after trial. We did not hold in that case, nor do we in this one, that a conviction after a plea of guilty can serve as a bar to subsequent civil litigation on the theory that the issues presented in the civil trial were, or could have been, litigated in the criminal proceeding" (*Vavolizza v Krieger,* 33 NY2d 351, 356). Following this word of caution, at least one court held that a conviction predicated on a plea of guilty could not be given conclusive effect in a later civil suit (*Matter of Bach,* 81 Misc 2d 479, 483-484). Nonetheless, in several cases, without any discussion relating to the difference between a criminal conviction upon a jury verdict and a conviction upon a plea of guilty, this court has applied collateral estoppel where there had been a prior guilty plea (*Brennan v Mead,* 81 AD2d 821, affd 54 NY2d 811; *Alexander v City of Peekskill,* 80 AD2d 626; *Armchair Races v Caso,* 51 AD2d 565; see, also, *Matter of Cumberland Pharmacy v Blum,* 69 AD2d 903). The Court of Appeals, while not discussing the issue, has apparently now held that the doctrine of collateral estoppel might be applicable in such a context (*Brennan v Mead, supra*).

The question before us, then, is whether the circumstances warrant applying collateral estoppel here. Initially, I would note that it is unnecessary in this case for us to make a general statement as to the efficacy of applying collateral estoppel where there has been a prior *Serrano-Alford* plea (*People v Serrano,* 15 NY2d 304, *supra; North Carolina v Alford,* 400 US 25). There is much to be said for

the view that collateral estoppel should never attach where based solely on a *Serrano-Alford* plea, since in such a situation not only has there been no trial verdict of guilty, but the defendant, in pleading guilty, has not admitted the acts constituting the crime. The Court of Appeals has never ruled on the question, although this court, in *Matter of Cumberland Pharmacy v Blum* (69 AD2d 903, *supra*), while holding that a conviction provided sufficient evidence to warrant a finding that the defendant pharmacy had engaged in an unacceptable practice, noted in dicta that even though the conviction was based on a *Serrano-Alford* plea, it was "conclusive proof of the underlying facts". Whatever the validity of this statement in *Matter of Cumberland Pharmacy* (*supra*), the point which must always be emphasized is that, in deciding the applicability of collateral estoppel, a case-by-case analysis is necessary, with attention being paid to the " 'realities of the [prior] litigation' " (*People v Plevy,* 52 NY2d 58, 65, quoting from *Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65, 72; see *Haring v Prosise,* 462 US __, 103 S Ct 2368; *Gilberg v Barbieri, supra,* p 292; *Kossover v Trattler,* 82 AD2d 610, 622-624 [concurring opn, GIBBONS, J.]). My colleagues in the majority ignore this very basic and important principle when they state that "those who knowingly and voluntarily plead guilty to substantial criminal charges * * * should not expect the courts to look behind the convictions based on such pleas in order to relieve them from adverse civil consequences which may follow". Collateral estoppel should not be blindly applied to all cases where there have been previous guilty pleas, whether of the *Serrano-Alford* variety or otherwise. In this particular case, there are several factors present which demonstrate the impropriety of applying collateral estoppel.

Firstly, as declared by the court which took defendant's guilty plea and sentenced him to a term of probation, the question of who started the fire was not litigated in the prior criminal proceeding. This is not a case where the criminal defendant, as in *Matter of Cumberland Pharmacy* (*supra*), simply refrained from admitting the facts constituting his guilt. Instead, defendant repeatedly and emphatically asserted that he was being framed, that his

neighbor started the fire, and that he was innocent. In the face of these protestations, it cannot be said that the factual question of who started the fire was actually litigated and determined in the criminal action. Accordingly, defendant should not, despite his plea of guilty, be estopped from litigating this issue in the present suit (*Haring v Prosise, supra; Dier v City of New York,* 79 AD2d 596).

Secondly, the circumstances of the plea and sentence warrant a conclusion that defendant did not have a full and fair opportunity to litigate the question of whether he was responsible for the fire. Whether defendant had a full and fair opportunity to litigate for collateral estoppel purposes is not determined affirmatively just because defendant had an opportunity to proceed to trial on the issue (*People v Plevy,* 52 NY2d 58, 65, *supra*). Nor can it be resolved "by a finding that the party against whom the determination is asserted was accorded due process in the prior proceeding" (*Gilberg v Barbieri,* 53 NY2d 285, 292, *supra*). Contrary to the majority's view that "[a]s long as the guilty plea stands, the defendant is guilty and cannot be heard to say otherwise", the Court of Appeals has declared that "[t]he point of the inquiry, of course, is not to decide whether the prior determination should be vacated but to decide whether it should be given conclusive effect beyond the case in which it was made" (*Gilberg v Barbieri, supra,* p 292).

The realities of the prior judgment, upon which the applicability of collateral estoppel turns, include the fact that defendant was obviously afraid that if he went to trial, he ran the risk of being convicted of a more serious charge and of being sentenced to prison. Thus, the very seriousness of the criminal case had the effect, not of providing an incentive to litigate his innocence fully and completely, but of discouraging him from presenting his case to a jury. In similar circumstances, the Court of Appeals has held that collateral estoppel should not be applied (*People v Plevy, supra,* pp 65-66).

The realities of defendant's guilty plea also involve two of the facts relating to the full and fair opportunity to litigate noted in *Schwartz v Public Administrator of County of Bronx* (*supra,* p 72). The extent of the prior

litigation was minimal, particularly in light of defendant's assertions of innocence. There really is nothing in the record from which we could conclude that defendant is, indeed, the one who started the fire. Additionally, the agreement reached by the District Attorney's office, the court, and defendant, with respect to his plea, is analogous to a compromise verdict, which, as stated by the Court of Appeals in *Schwartz* (*supra*), tends to support the conclusion that the prior judgment should not be given conclusive effect in a later, collateral matter. For the District Attorney's part, he agreed to accept the *Serrano-Alford* plea to a reduced charge, because conviction after trial was uncertain. For the court's part, it promised a sentence of probation in return for the plea. For defendant's part, he was willing to forego litigation of the issue of his guilt or innocence provided he received a promise that he would not go to jail and provided that he was not forced to recant from his position that he was innocent.

The majority states that "[t]he record of the criminal proceeding shows clearly that the defendant was aware of what he was doing when he knowingly and voluntarily entered such plea and he must be held bound both criminally and civilly by his plea". My colleagues also claim that a person entering a guilty plea "must accept the consequences of his action". The problem with these assertions is that they beg the essential question, which is whether the plea in this case should have, as a consequence, collateral estoppel effect in a subsequent civil suit. It appears as though the majority is of the view that when defendant pleaded guilty, he knowingly and voluntarily accepted, as a consequence of his plea, that he would be subject to civil liability for the fire, and would not have a chance to contest this issue in a civil forum. Nothing could be further from the truth. The record clearly reveals that defendant did not waive any rights except those pertaining directly to the criminal charge which was pending against him. Over and over again, defendant emphasized that, while he was innocent, he was only pleading guilty in order to dispose of the criminal matter. There is nothing in the record which indicates that defendant, in pleading guilty, knowingly and voluntarily gave up his right to claim in a civil action that he was innocent.

Finally, the realities of the situation include the fact that, not only did defendant protest that he was being framed and that he was innocent, but the court specifically stated that the question of who started the fire was not being decided. It is true that a Judge need not, before accepting a guilty plea, inform the defendant of all possible future consequences, such as the possibility of the plea's effect in a later, collateral proceeding (*People v Wilson,* 81 Misc 2d 739). However, the court should not do anything affirmatively to mislead the defendant. Here, the court's statement that it had not been determined who started the fire could easily have been taken as confirmation of defendant's understanding that his guilt had only been established for penal purposes, but that, in every other respect, the issue was an open question. If, instead, defendant had been told at sentencing that, for all intents and purposes, in all contexts, penal and otherwise, a judgment of conviction meant that he was considered the one who was responsible for the fire, then he may well have sought to withdraw his guilty plea. While it was not necessary for the court to so inform defendant, the statement that was made had a contrary meaning and naturally would tend to lead defendant to a different conclusion.

As earlier stated, the policy considerations underlying the doctrine of collateral estoppel must be considered in deciding its applicability in a particular case. Specifically, I submit that it would be unfair to impose collateral estoppel on defendant. Much of what has already been said bears on the matter of fairness. That defendant has always asserted his innocence and that we have no record of testimony from which we can confidently and reliably conclude that, nonetheless, defendant was responsible for the fire, cuts to the heart of the doctrine of collateral estoppel. A judicial determination is given collateral estoppel effect because, among other things, we are reasonably certain of its correctness. Certainty is not present here. All we really know is that there was enmity between the defendant and his neighbor and that there was a fire. The circumstances indicate that defendant's plea was very possibly entered "merely because he [did] not want to risk a conviction for a higher offense or wishe[d] to spare his family

or himself the ordeal of a trial, although he * * * [was] firmly convinced of his own innocence" (*People v Grant,* 45 NY2d 366, 379). Additionally, the court itself, at sentencing, represented to defendant that, as a factual matter, the question of who started the fire had not been litigated or determined. In consideration of all these factors, it would be unfair to hold that, in opting not to oppose the criminal charge, defendant did, indeed, litigate the matter of responsibility for the fire and that he should now suffer a substantial financial judgment without being afforded the opportunity of contesting his liability.

LAZER, J. P., and BOYERS, J., concur with NIEHOFF, J.; GIBBONS, J., dissents and votes to affirm, with an opinion.

Order of the Supreme Court, Nassau County, dated January 21, 1982, reversed, on the law, with costs, and plaintiff's motion granted, to the extent that it is awarded summary judgment on the issue of liability, and matter remitted to the Supreme Court, Nassau County, for further proceedings consistent with the opinion herewith.