■ In the Matter of HERMAN SILMON, Respondent, v BRION D. TRAVIS, Appellant. [698 NYS2d 685] —In a proceeding pursuant to CPLR article 78 to review a determination of the New York State Board of Parole, dated June 23, 1997, which, after a hearing, denied the petitioner's request to be released on parole, the appeal is from an order of the Supreme Court, Westchester County (Leavitt, J.), dated November 18, 1998, which granted the petition to the extent of annulling the determination and directing the New York State Board of Parole to conduct a de novo hearing.

Ordered that on the Court's own motion, the appellant's notice of appeal is treated as an application for leave to appeal, and leave to appeal is granted (*see,* CPLR 5701 [c]); and it is further,

Ordered that the order is reversed, on the law, with costs, the petition is denied, and the proceeding is dismissed on the merits.

In 1993 the petitioner was convicted, by way of an *Alford* plea (*see, North Carolina v Alford,* 400 US 25; *People v Serrano,* 15 NY2d 304), of manslaughter in the first degree, and was sentenced to an indeterminate term of imprisonment of 5 to 15 years. The conviction stems from an incident that occurred on or about August 14, 1992, during which the petitioner is alleged to have brutally killed his wife by bludgeoning her with a barbell. The Supreme Court annulled the Parole Board's determination as arbitrary and capricious and directed a de novo hearing. We reverse.

It is well settled that the Parole Board's determinations are discretionary, and if made in accordance with the statutory factors, are not subject to judicial review (*see, Matter of Heitman v New York State Bd. of Parole,* 214 AD2d 673; *Matter of Davis v New York State Div. of Parole,* 114 AD2d 412; Execu-

tive Law § 259-i [1], [2]). It is equally settled that when a defendant enters an *Alford* plea, although he does not admit to the facts underlying the crime in question, that conviction is no different than any other and may be used against him (*see, People v Miller,* 91 NY2d 372, 378; *Matter of Hopfl,* 48 NY2d 859, 860; *Merchants Mut. Ins. Co. v Arzillo,* 98 AD2d 495, 505-506).

Here, the record discloses that the Parole Board rendered its determination after considering the full record, including the petitioner's hearing testimony, institutional background, criminal history, and release plans. The Parole Board was plainly aware of the petitioner's institutional and educational achievements, the importance of which are in no way to be diminished, but found that they were outweighed by the serious and brutal nature of the crime, as well as the petitioner's lack of remorse and insight. The record indicates that the Parole Board acted in accordance with the statutory requirements, and therefore there is no basis to disturb its discretionary determination on appeal (*see, Matter of Putland v Herbert,* 231 AD2d 893; *Matter of Bockeno v New York State Parole Bd.,* 227 AD2d 751; *Matter of Dudley v Travis,* 227 AD2d 863, 864; *Matter of Heitman v New York State Bd. of Parole, supra*; *Matter of McLain v New York State Div. of Parole,* 204 AD2d 456; *Matter of Walker v New York State Div. of Parole,* 203 AD2d 757, 758-759; *Matter of Davis v New York State Div. of Parole, supra*). Bracken, J. P., Thompson and Sullivan, JJ., concur.

Friedmann, J., dissents and votes to affirm the order appealed from with the following memorandum:

On August 14, 1992, the petitioner's wife was bludgeoned to death with a barbell.

According to the petitioner's account, he telephoned his wife from his office all that morning, but received no answer. She was on medication for a back condition, and had a history of oversleeping, but on this occasion she was still not at work by 11:00 A.M. Concerned, the petitioner took an early lunch hour and returned to his Brooklyn apartment at about 12:20 P.M. There, he found his wife's lifeless body on the floor, and his apartment ransacked. Ultimately the petitioner was arrested for the murder of his wife.

From the outset the petitioner denied that he had committed this crime. At age 36, the petitioner was a college graduate with a steady work history and no criminal record. Although offered 2 to 6 years imprisonment for a plea of guilty, the petitioner turned the plea bargain down because he refused to admit that he had killed his wife. It was his position that the

police had overlooked evidence that the murder had been committed by a third party in the course of a burglary—including the fact that (as the petitioner's investigator allegedly discovered) his wife's driver's license was recovered some months after the petitioner's incarceration from an unidentified individual who also inexplicably knew details about the crime.

Although the petitioner remained adamant that he had not killed his wife, he admitted that he and his wife had had violent fights, *inter alia*, over his "involvement with another woman". In addition, he was told that the prosecutor's theory against him was that his wife was having an affair and intended to leave him, based upon the fact that she had purchased an airline ticket. The petitioner denied knowing that his wife planned to leave him, although he was aware that she had bought a plane ticket to visit her mother and sister. In view of the weight of the prosecution's circumstantial case, the petitioner entered an *Alford* plea to manslaughter in the first degree in exchange for a prison term of 5 to 15 years imprisonment. Under an *Alford* plea, an accused is allowed to consent to be punished "as if he were guilty" while maintaining his innocence of the actual crime charged (*North Carolina v Alford,* 400 US 25, 36-37; *see, People v Serrano,* 15 NY2d 304). Such pleas are allowed in New York State where the accused, while maintaining his innocence, " 'might reasonably conclude [that] a jury would be convinced of his guilt and that he would fare better in the sentence by pleading guilty' " (*North Carolina v Alford, supra,* at 33, quoting *McCoy v United States,* 363 F2d 306, 308). It goes without saying that the Trial Judge must agree, for whatever reason(s), that the case justifies both the unusual departure from conventional plea requirements and the attendant leniency in the sentencing.

It is not disputed that the petitioner was a model prisoner for five years. While in jail he participated in educational and vocational programs, as well as in programs for alternatives to violence and substance abuse (the petitioner admitted to having been a "recreational" user of marihuana, hashish, and cocaine). He had no record of institutional or disciplinary problems during his incarceration, and received a Certificate of Earned Eligibility. He tutored other inmates seeking their Graduate Equivalency Diplomas, and taught classes in accounting, investment, and small business administration. According to letters from prison personnel, he worked hard and cheerfully with "inmates, teachers, and facility staff", and applied his "advanced computer skills" to the publication of

intramural materials. He collaborated with a friend, Thomas McIntyre, Ph.D., a Professor at Hunter College, in composing articles on prison issues and prison slang. Notwithstanding his rejection of violence, he enjoyed the respect of the other inmates "for his intelligence, fairness, linguistic ability, and respect for all cultures, religions and orientations"—so much so that he was elected as a compromise candidate to represent the entire inmate population while incarcerated on Rikers Island. At his parole hearing, the petitioner indicated that he had a job prospect with a computer company in California. In the alternative, Professor McIntyre had offered to open his home to him while he pursued a Master's degree in Correctional Education. Failing these, a life-long family friend who owned a restaurant in Buffalo, New York, wrote to the Parole Board that he was ready to employ the petitioner.

The petitioner appeared before the Parole Board on June 17, 1997, to explore the propriety of his minimum-period release. Aside from an isolated inquiry about the petitioner's "major accomplishment" in jail—accompanied by the observation, "you've been a very, very good inmate"—the Parole Board limited its questioning of the petitioner to the events surrounding the "very savage homicide" of his wife. Immediately after the hearing, and apparently without any discussion amongst the Commissioners, the Panel remanded the petitioner for the maximum two-year period because of its expectation that he "would not live and remain at liberty without violating the law and [his] release at this time is incompatible with the welfare and safety of the community". In so determining, the Parole Board cited on the record the brutality of the crime and opined: "Instant conviction indicates an emerging propensity for extreme violence and complete indifference [to] the rights of others. Despite pleading guilty to instant offense you now deny your guilt and accept no responsibility for your actions that resulted in the brutal homicide of your wife. You lack remorse and insight".

The petitioner commenced the instant CPLR article 78 proceeding, at the conclusion of which the Supreme Court vacated the Parole Board's decision and directed that a de novo release proceeding be held. In so ruling, the court decreed that "where, as here, [an] inmate has persistently maintained his innocence of [an] offense, and both the prosecution and the court accepted his plea of 'guilty' without any admission of culpability, a determination based upon his lack of remorse for the offense is both arbitrary and capricious". I agree.

The Parole Board's requirement that the petitioner display

remorse under these circumstances constitutes "irrationality bordering on impropriety" (*Matter of Russo v New York State Bd. of Parole,* 50 NY2d 69, 77; *see, Matter of Gonzalez v Wilson,* 106 AD2d 386, 387). It is illogical and palpably unjust for our penal system to permit the sentencing court and the prosecutor to accept the petitioner's *Alford* plea, and then allow the Parole Board to insist that the petitioner admit guilt as a condition of parole—a condition that the State expressly waived as an element of the original bargained-for conviction. Moreover, the petitioner paid for this "waiver" on the State's part by accepting a prison term of 5 to 15 years in order to maintain his innocence, when he could have served only 2 to 6 years with an admission of guilt. Among the anomalies created by the instant situation is the fact that the petitioner is being doubly penalized for his *Alford* stance—first by accepting a sentence of 5 to 15 years of imprisonment instead of 2 to 6 years, and now because he can apparently never be released until he acknowledges his guilt anyway. According to the Parole Board's flawed logic, a petitioner who enters a conventional guilty plea and allocutes to the crime charged is eligible for release long before an inmate who enters a plea containing a protestation of innocence. In addition, the Parole Board is forcing the petitioner into a Catch-22 situation where he can only be paroled if he perjures himself, by expressing contrition for a deed that he has heretofore sworn that he did not commit.

The language of the Parole Board's decision betrays that it is not based upon the facts in the record. The record indicates that the petitioner was not involved in a single scuffle throughout his entire five years of incarceration, so that there is nothing (aside from the murder that the petitioner has denied committing—with the blessing of the court and the prosecutor) to substantiate the Parole Board's finding of an "emerging propensity for extreme violence". Moreover, the petitioner has maintained his innocence from the outset, so that there is no predicate for the Parole Board's suggestion that the petitioner is only "now" denying his guilt after accepting the benefits of a guilty plea.

There is no merit to the Attorney General's position that the petitioner is endeavoring to escape the "legal consequences" of his guilty plea, or that he is proposing that his adjudication of "guilty" is somehow not conclusive for all "legal" purposes (*cf., Merchants Mut. Ins. Co. v Arzillo,* 98 AD2d 495, 501-502). In other words, the petitioner is not claiming that his plea should not serve as a basis for civil or criminal penalties (*cf., Matter of Hopfl,* 48 NY2d 859), or that he should not in the future be

held to predicate felony status based upon his plea (*cf., People v Long,* 207 AD2d 988; *People v Geier,* 144 AD2d 1015), or that his plea cannot be used for impeachment or collateral estoppel purposes in another legal forum (*cf., Merchants Mut. Ins. Co. v Arzillo, supra; People v Miller,* 91 NY2d 372). He is simply asking that his eligibility for release be assessed in accordance with the applicable and relevant statutory factors (*see,* Executive Law § 259-i).

According to Executive Law § 259-i (1) (a) and (2) (c), when determining whether an inmate should be released on parole after the minimum period of imprisonment imposed by the sentencing court, the Parole Board should consider, *inter alia,* (1) the seriousness of the offense, (2) the inmate's prior criminal record, (3) his institutional record, including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates, and (4) release plans including community resources, employment, education, and training and support services available. "Remorse" is not a factor listed in Executive Law § 259-i. Notwithstanding the Court of Appeals' ruling that a petitioner is entitled to a de novo hearing when one or more members of the Parole Board consider "factors outside the scope of the applicable statute" (*Matter of King v New York State Div. of Parole,* 83 NY2d 788, 791), the Appellate Division, Third Department, has found it not inappropriate in a proper case (none of which has so far involved an *Alford* plea) for the Parole Board to consider a petitioner's failure to accept responsibility or express remorse for his crimes (*see, e.g., Matter of Dudley v Brown,* 227 AD2d 863 [the Board stressed lack of remorse where petitioner with history of mental illness and drug abuse stabbed 68-year-old woman to death in the course of robbing her of $13, following which he repeatedly returned to her apartment to steal additional property]; *Matter of Bockeno v New York State Parole Bd.,* 227 AD2d 751 [the petitioner convicted of sodomizing his two minor daughters refused, *inter alia,* to participate in sex offender counseling]; *Matter of Walker v New York State Div. of Parole,* 203 AD2d 757 [the petitioner, who killed the victim by recklessly firing his gun into a crowd while committing a robbery, expressed no remorse and failed to attend violent behavior modification program]). As noted above, however, this is *not* a proper case, both because the petitioner has maintained his innocence throughout, and because he has apparently pursued every available program for self-betterment that the penitentiary had to offer. Finally, because "remorse" is not a statutory requirement, it should at most be accorded second-

ary, and certainly not pivotal consideration by the Parole Board. Here, by its express terms the Parole Board's determination was based *only* on the petitioner's failure to express remorse and the seriousness of the crime.

If remorse is removed from the equation—both because of its impropriety in this context and because of its lack of a statutory underpinning—we are left with only "the seriousness of the crime" as the reason for the Parole Board's denial of the petitioner's application. And, indeed, the record before this Court supports the conclusion that there is in fact no other ground for denying the petitioner's application. However, the sentencing Judge was well aware of the crime's gravity when it decreed that five years was an adequate minimum sentence for the petitioner provided that he behaved himself (*see, e.g., Matter of Canales v Hammock,* 105 Misc 2d 71, 74). The petitioner has been a model prisoner. In addition, he has no prior criminal or psychiatric history leading up to the instant offense, which might have justified the Parole Board's revision of the minimum sentence imposed by the sentencing court (*see, e.g., Matter of King v New York State Div. of Parole,* 190 AD2d 423, 431, *affd* 83 NY2d 788, *supra*; *cf., Matter of Garcia v New York State Div. of Parole,* 239 AD2d 235; *Matter of Ristau v Hammock,* 103 AD2d 944, 945). Yet the Parole Board has declared that the petitioner should serve at least seven years before he is eligible for release. The Parole Board has thus effectively overruled the discretion of the sentencing court, and has resentenced the petitioner in accordance with its own determination that all violent offenders should be systematically denied early parole, notwithstanding its statutory obligation to consider each case on its individual merits. As the Appellate Division, First Department, observed in *Matter of King v New York State Div. of Parole* (*supra*, at 432-433): "The role of the Parole Board is not to resentence petitioner according to the personal opinions of its members as to the appropriate penalty for murder, but to determine whether, as of this moment, given all the relevant statutory factors, he should be released * * * Since * * * the Legislature has determined that a murder conviction per se should not preclude parole, there must be a showing of some aggravating circumstances beyond the inherent seriousness of the crime itself".

Accordingly, I would affirm the order appealed from, and would direct that a de novo parole release proceeding be conducted before a differently-constituted panel of the Parole Board.