[No. 45326-2-I. Division One. August 27, 2001.]

ROBERT FALKNER, *Appellant*, v. MICHAEL FOSHAUG, ET AL., *Respondents*.

114

*Sean P. Wickens* (of *Law Offices of Sverre O. Staurset, P.S.*) and *Stephen J. Oelrich*, for appellant.

*James B. Stoetzer* and *Thomas Top* (of *Lane Powell Spears Lubersky, L.L.P.*), for respondents.

AGID, C.J. — This case presents an issue of first impression: Whether a defendant whose counsel rendered ineffective assistance in a criminal proceeding may, after entering an *Alford* plea[1] to a lesser crime on remand, maintain a civil malpractice action against his former counsel. We hold that, under the circumstances presented here, neither estoppel nor public policy bars the malpractice suit. Because Falkner has maintained his innocence throughout the proceedings, including in his *Alford* plea, and his conviction was reversed based on his attorney's failure to adequately defend him, he may be able to prove at trial that it was the deficient representation, not his illegal acts, that were the proximate cause of the years he spent in prison.

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

## FACTS

In 1993, a jury convicted Robert Falkner of second degree murder for killing his wife, Barbara. Following his conviction, Falkner discharged his attorney, Michael Foshaug, hired his present counsel and moved for a new trial based on ineffective assistance of counsel. The trial court denied Falkner's motion, but on appeal this court ruled that "there is a significant probability that Foshaug's failure to investigate and prepare the defense case" prejudiced Falkner, and that, but for the errors, the result of the first trial might have been different.[2] Accordingly, Falkner's conviction was vacated and remanded to the trial court.

In December 1998, the case went to trial for a second time. When the State's first witness violated a pretrial ruling excluding ER 404(b) evidence, the trial court declared a mistrial. Falkner's new counsel then filed a motion to dismiss the charges because of prosecutorial misconduct.[3] Before the court could rule on the motion, the State offered to reduce the charge to first degree manslaughter and recommend that Falkner be immediately released from custody if he entered an *Alford*[4] plea to the reduced charge. Falkner, who had been in prison for nearly six years, accepted the State's offer but maintained his innocence. The trial judge found a factual foundation for Falkner's plea and accepted it as intelligent and voluntary. The judge sentenced Falkner to 41 months—the high end of the standard range—because he found no basis for an exceptional sentence. Falkner had already served more time in

---

[2] *State v. Falkner*, No. 36692-1-I (Wash. Ct. App. May 5, 1997).

[3] By that time, the State had amassed sanctions in the amount of $3,000 for its repeated discovery violations. Falkner claims this was because the State was "concerned about the weakness of its case."

[4] An *Alford* plea allows a defendant to maintain innocence while admitting that the government probably has enough evidence to prove guilt beyond a reasonable doubt. *See North Carolina v. Alford*, 400 U.S. 25. The Washington counterpart to *Alford* is *State v. Newton*, 87 Wn.2d 363, 552 P.2d 682 (1976).

prison than he was sentenced to, so the court entered an order releasing him.

After he entered the *Alford* plea, Falkner renewed the malpractice lawsuit he had initiated against Foshaug in 1996.[5] On the theory that Falkner's *Alford* plea precluded his claims, Foshaug moved for summary judgment. The trial judge granted Foshaug's motion and dismissed Falkner's claim, assuming for the purposes of summary judgment that Foshaug breached the standard of care, but reasoning:

> [B]ecause of the public policy cited by the defendants and some of the other evidence in Washington law that would tend to lead to the fact that public policy would be the public policy of Washington, including the slayer statute and the other statutes that would indicate that a person convicted of a crime is not intended to benefit from the crime in any way, and also from the nature of the *Alford* plea, and the entire concept underlying attorney malpractice actions in general, namely, there has to be a showing of harm that was caused by whatever breach of care there was.
>
> . . . .
>
> I do, however, find that the law in Washington would be that there is a requirement of showing, being able to show innocence or exoneration. Clearly, there is no showing of exoneration that has been made. And that the *Alford* plea, even though it reserves the statement that the defendant, the plaintiff in this case, was guilty, nevertheless, is based on the concept that Mr. Faulkner [sic] felt he would have been found guilty. So, for a whole variety of reasons, the Court will grant the motion and dismiss this action.

Falkner appeals. He agreed at oral argument with the trial court's ruling that he would have to establish his innocence to prevail in a criminal malpractice action, but asserts that his *Alford* plea does not preclude him from making such a showing at trial.

---

[5] It had been held in abeyance pending the outcome of the criminal proceedings.

## DISCUSSION

█ A legal malpractice claim requires proof of an attorney-client relationship creating a duty of care, breach of that duty, damage, and proximate cause.[6] In criminal malpractice cases,[7] the majority of courts who have considered the issue have imposed two additional requirements—a successful postconviction challenge and proof the plaintiff did not commit the underlying crime.[8] Neither requirement has been considered in Washington in the context of a legal malpractice case. We conclude that both a successful postconviction challenge and proof of innocence are necessary to maintain a criminal malpractice claim.

█ A brief overview of other jurisdictions' treatment of criminal malpractice claims is instructive. First, many jurisdictions require that a defendant obtain postconviction relief before initiating a malpractice claim, reasoning that it is "inappropriate to treat victims of alleged negligence by defense counsel as having been 'harmed,' for the purpose of maintaining a legal malpractice action ... unless they show that their counsel failed to meet the established standards in a way that would make postconviction relief appropriate."[9] In *Peeler v. Hughes & Luce*,[10] the Supreme Court of Texas observed that unless the plaintiff's conviction has been overturned, the plaintiff's illegal conduct, not the negligence of his counsel, is the cause in fact of any injuries flowing from the conviction as a matter of law. In this case, Falkner's successful challenge to the conviction

---

[6] *Hizey v. Carpenter*, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992). There is no question that an attorney-client relationship and a breach existed here.

[7] Criminal malpractice is an elliptical phrase meaning "legal malpractice in the course of defending a client accused of a crime." Otto M. Kraus & Ronald E. Mallen, *The Misguiding Hand of Counsel—Reflections on "Criminal Malpractice,"* 21 UCLA L. Rev. 1191 n.2 (1974).

[8] *Wiley v. County of San Diego*, 19 Cal. 4th 532, 966 P.2d 983, 985 n.2, 79 Cal. Rptr. 2d 672 (1998) (collecting cases).

[9] *Stevens v. Bispham*, 316 Or. 221, 851 P.2d 556, 562 (1993). *See also, e.g., Morgano v. Smith*, 110 Nev. 1025, 1029, 879 P.2d 735, 737 (1994); *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 497 (Tex. 1995).

[10] 909 S.W.2d 494, 498 (Tex. 1995).

on grounds of ineffective assistance of counsel and the sentence that he claims caused his harm satisfy this requirement.[11]

■ In addition to the postconviction relief requirement, many jurisdictions require proof that the criminal defendant/malpractice plaintiff is innocent of the underlying criminal charges as an additional element of the civil malpractice claim.[12] "Only an innocent person wrongly convicted due to inadequate representation has suffered a compensable injury because in that situation the nexus between the malpractice and palpable harm is sufficient to warrant a civil action, however inadequate, to redress the loss."[13] To satisfy the innocence requirement, the plaintiff must prove at a civil trial that he or she is innocent of the charged crime. Although the parties' briefs are not entirely clear, they seem to indicate that they, like the trial judge, endorse this position, but disagree about whether a criminal malpractice plaintiff who has entered an *Alford* plea should be precluded, by estoppel or some other doctrine, from making this showing.

Falkner argues that because his *Alford* plea does not admit guilt of the underlying charges, he should be permitted to prove his innocence at trial, while Foshaug asserts

---

[11] Because the issue is not before us, we express no opinion on whether postconviction relief on other grounds would satisfy this requirement. *See, e.g., Wiley,* 966 P.2d at 989-90, discussing the inappropriateness of permitting a malpractice claim where the conviction has been overturned based on " 'legal technicalities.' "

[12] *See, e.g., Wiley,* 966 P.2d 983; *Kramer v. Dirksen,* 296 Ill. App. 3d 819, 695 N.E.2d 1288 (1998); *Glenn v. Aiken,* 409 Mass. 699, 569 N.E.2d 783 (1991); *Morgano,* 879 P.2d 735; *Carmel v. Lunney,* 70 N.Y.2d 169, 511 N.E.2d 1126 (1987). Michigan and Ohio have refused to impose an innocence requirement. *See Gebhardt v. O'Rourke,* 444 Mich. 535, 510 N.W.2d 900, 908 (1994); *Krahn v. Kinney,* 43 Ohio St. 3d 103, 538 N.E.2d 1058, 1061 (1989). These courts reason that a defense attorney's negligence may be the legal cause of a client's damages, notwithstanding the defendant's actual commission of a crime. But the facts of these cases differ from ours in significant respects. In *Krahn,* the attorney failed to convey a plea offer, and in *Gebhardt,* an offer of immunity. Several commentators have also criticized the innocence requirement as unnecessary and unfair. *See, e.g.,* Susan M. Treyz, Note, *Criminal Malpractice: Privilege of the Innocent Plaintiff?,* 59 FORDHAM L. REV. 719 (1991).

[13] *Wiley,* 966 P.2d at 987 (citing *Bailey v. Tucker,* 533 Pa. 237, 621 A.2d 108, 113 (1993)).

that Falkner's *Alford* plea forever prevents him from establishing his innocence. But most of the cases on which Foshaug relies hold that a criminal defendant who has entered an undisturbed, standard guilty plea cannot later allege in a malpractice action that he was innocent. In this case we must decide whether an *Alford* plea has the same effect as a standard guilty plea.

First, some background on the innocence requirement will be helpful. The cases from other jurisdictions " 'treat a defendant attorney's negligence as not [being] the cause of the former client's injury as a matter of law, unless the plaintiff former client proves that he did not commit the crime.' "[14] The public policy behind this requirement is that "[r]egardless of the attorney's negligence, a guilty defendant's conviction and sentence are the direct consequence of his own perfidy"[15] and, thus, cannot be the basis for civil damages.

Relying either on collateral estoppel or public policy considerations, jurisdictions adopting the innocence requirement also hold that defendants who have voluntarily entered a standard guilty plea cannot later allege their innocence in a civil malpractice action.[16] In *State ex rel. O'Blennis v. Adolf*,[17] a defendant convicted of assault with intent to kill succeeded in vacating his conviction in postconviction proceedings, but eventually pleaded guilty to the original charge while represented by different counsel. The court held the defendant was collaterally estopped from suing for legal malpractice because innocence was an indispensable element of his cause of action and his guilty

---

[14] *Id.* at 986 (quoting *Glenn*, 569 N.E.2d at 786).

[15] *Id.* at 987.

[16] We note that in this case the trial court appeared to require proof of innocence as a prerequisite to avoiding summary judgment. This would be an impossible standard to meet because, as a matter of both logic and procedure, a plaintiff can *allege* his innocence only in the complaint before the trial. The real issue is whether, considering the history of the case, he can create a material issue of fact about his innocence for the jury to decide at trial.

[17] 691 S.W.2d 498, 503 (Mo. Ct. App. 1985).

plea was knowing and voluntary.[18] In *Carmel v. Lunney*,[19] the New York Court of Appeals reached the same conclusion, but did not rely on collateral estoppel. That court held that because the plaintiff entered a guilty plea to a misdemeanor violation, "he can neither assert, nor establish, his innocence" and "has thus failed to state a cause of action, and his claim was properly dismissed."[20] It further noted that as "long as the determination of his guilt of that offense remains undisturbed, no cause of action will lie."[21]

While we agree that a knowing and voluntary guilty plea in a criminal trial precludes a defendant from alleging his innocence in a subsequent legal malpractice case, that does not answer the more difficult question whether entry of an *Alford* plea has the same effect. Citing *In re Discipline of McLendon*,[22] Foshaug argues that " 'an *Alford* plea is conclusive proof of guilt of the criminal offense charged.' "[23] In that case, the Supreme Court considered whether due process requires that a lawyer subject to a disciplinary hearing be permitted to present the circumstances surrounding the entry of his *Alford* plea in mitigation of the disciplinary penalty. After observing that "due process prohibits an *Alford* plea from being the basis for collateral estoppel in a subsequent action,"[24] the court noted that in Florida, " 'a judgment of guilt entered upon an *Alford* plea is conclusive proof of guilt of the criminal offense

---

[18] *See generally* Gregory G. Sarno, Annotation, *Legal Malpractice in Defense of Criminal Prosecution*, 4 A.L.R.5TH 273 (1992).

[19] 70 N.Y.2d 169, 511 N.E.2d 1126 (1987).

[20] *Id.* at 1128.

[21] *Id. See also Brown v. Theos*, 338 S.C. 305, 526 S.E.2d 232 (1999) (holding that a defendant who successfully overturned his original conviction but entered a plea of no contest at a second trial could not sue his original counsel for damage sustained as a result of the no contest plea because the proximate cause of his damages was his decision to enter the plea).

[22] 120 Wn.2d 761, 845 P.2d 1006 (1993).

[23] *Id.* at 771 (quoting *Florida Bar v. Cohen*, 583 So. 2d 313, 314 (Fla. 1991)).

[24] *Id.* at 770.

charged.' "[25] This is because the Florida Bar rules state that a judgment of guilt shall be conclusive proof of guilt of the criminal offense charged for the purposes of their disciplinary rules. The court went on to hold, however, that the attorney should be permitted to testify about the circumstances surrounding his plea. *McLendon* is of little relevance here.

*Safeco Insurance Co. of America v. McGrath*[26] contains a more thorough analysis of the preclusive effects of *Alford* pleas in civil actions. In *McGrath*, this court held that a criminal defendant who enters an *Alford* plea has not had a "full and fair opportunity" to litigate the dispositive issues in the case and is therefore not collaterally estopped from denying certain elements of the crime in a later civil action:

> [I]t has been held that the doctrine of collateral estoppel is applicable where defendants in civil cases have been previously convicted of criminal charges after a trial, for indeed, they have had a "full and fair opportunity" to litigate the issues. . . .
>
> The same cannot necessarily be said, however, where the criminal conviction is based on an *Alford*-type guilty plea. A criminal defendant must contend with powerful, coercive forces . . . . Under such coercive circumstances, the policies underlying application of the doctrine of collateral estoppel have not been met. . . . Therefore, application of the doctrine would work an injustice under these facts.[27]

While *McGrath* did not present the same issue as our case, its reasoning applies equally here to preclude the use of collateral estoppel as a basis for barring Falkner's suit against Foshaug. Because we cannot say that an *Alford* plea in every instance in fact provides a full and fair opportunity to litigate the question of a defendant's guilt,

---

[25] *Id.* at 771 (quoting *Florida Bar*, 583 So. 2d at 314). Respondents state in their brief that an "*Alford* plea of guilty *is conclusive proof of guilt of the criminal offense charged*," misrepresenting the *McLendon* court's holding as a holding under Washington, rather than Florida law.

[26] 42 Wn. App. 58, 62-63, 708 P.2d 657 (1985), *review denied*, 105 Wn.2d 1004 (1986).

[27] *Id.* at 62-63 (citations and footnote omitted).

we conclude the elements of collateral estoppel are not present here.[28] Indeed, Falkner had no real incentive to litigate the issue because his agreement to enter an *Alford* plea was the equivalent of a "get out of jail free" card.[29]

But the trial court did not rely on collateral estoppel to bar Falkner's claim. In observing that "a person convicted of a crime is not intended to benefit from the crime in any way," the trial court indicated that it was relying on public policy principles to preclude Falkner's suit. Foshaug cites this same concern—that no person shall profit from his own wrongdoing—in his brief. But the trial court and Foshaug ignore the significant fact that this concern, as well as all the other public policy arguments Foshaug presents, are served by imposing an actual innocence requirement. Requiring a defendant to prove by a preponderance of the evidence that he is innocent of the charges against him[30] will prohibit criminals from benefiting from their own bad acts, maintain respect for our criminal justice system's procedural protections, remove the harmful chilling effect on the defense bar, prevent suits from criminals who "may be guilty, [but] could have gotten a better deal,"[31] and

---

[28] The elements of collateral estoppel are:

"(1) the issue decided in the prior adjudication must be identical with the one presented in the second; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea of collateral estoppel is asserted must have been a party or in privity with a party to the prior litigation; and (4) application of the doctrine must not work an injustice."

*Id.* at 62 (quoting *Beagles v. Seattle-First Nat'l Bank*, 25 Wn. App. 925, 929, 610 P.2d 962 (1980)).

[29] *See Talarico v. Dunlap*, 177 Ill. 2d 185, 685 N.E.2d 325, 331 (1997) (because plaintiff's plea bargain would result in a significant reduction in the charges and sentence, he lacked an "incentive to litigate" the issue at the criminal trial).

[30] We agree with the court in *Wiley* that the burden of proof at trial will be complex, requiring the jury to decide whether the plaintiff has proven by a preponderance of the evidence that, but for his attorney's negligence, the jury would not have found him guilty beyond a reasonable doubt. *Wiley*, 966 P.2d at 990. But the potential difficulty in articulating the standard of proof is not a valid reason for dismissing Falkner's claim, especially where a jury's finding in his favor would not produce a result inconsistent with our decision overturning his conviction and his entry of an *Alford* plea.

[31] *Stevens*, 851 P.2d at 565.

prevent a flood of nuisance litigation. These considerations all support our conclusion that postconviction relief is a prerequisite to maintaining the suit and proof of innocence is an additional element a criminal defendant/malpractice plaintiff must prove to prevail at trial in his legal malpractice action. There are no other public policy considerations argued by the parties or reflected in the cases that are sufficient to prevent a defendant who has entered an *Alford* plea from initiating a civil malpractice action.

█ █ Although not argued by the parties, we have considered whether reasons of judicial integrity, finality of judgments and respect for the judicial process are sufficient to bar Falkner's malpractice claim. Together these considerations are referred to as judicial estoppel, a doctrine the Washington courts have discussed on occasion.[32] Recently, the United States Supreme Court invoked judicial estoppel in *New Hampshire v. Maine*.[33] It described the doctrine as preventing " 'perversion of the judicial process' "[34] by not allowing parties to " 'gain an advantage by litigation on one theory, and then seek[ing] an inconsistent advantage by pursuing an incompatible theory.' "[35] Both our courts and the Supreme Court note various factors that permit courts to exercise their discretion to apply the doctrine.[36] While these factors are not exclusive and "[a]dditional consider-

---

[32] *See, e.g., Markley v. Markley*, 31 Wn.2d 605, 614-15, 198 P.2d 486 (1948); *Mueller v. Garske*, 1 Wn. App. 406, 409, 461 P.2d 886 (1969); *Raymond v. Ingram*, 47 Wn. App. 781, 785, 737 P.2d 314, *review denied*, 108 Wn.2d 1031 (1987).

[33] 532 U.S. 742, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001).

[34] *Id*. at 750 (quoting *In re Cassidy*, 892 F.2d 637, 641 (7th Cir.), *cert. denied*, 498 U.S. 812 (1990)).

[35] *Id*. (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477, at 782 (1981)).

[36] In *Raymond*, this court summarized our Supreme Court's discussion of judicial estoppel:

"A number of limitations upon, or qualifications of, the rule against assuming inconsistent positions in judicial proceedings have been laid down. Thus, the following have been enumerated as essentials to the establishment of an estoppel under the rule that a position taken in an earlier action estops the one taking such position from assuming an inconsistent position in a later action: (1) The inconsistent position first asserted must have been successfully maintained; (2) a judgment must have been rendered; (3) the positions must be

ations may inform the doctrine's application in specific factual contexts,"[37] both formulations require that the party against whom the doctrine is applied has taken a position in the first instance that is "clearly inconsistent"[38] with its later position.

The facts in this case do not meet that requirement. Falkner maintained his innocence both when he entered his *Alford* plea and, earlier, when he instituted this malpractice action. Were he to prevail in the latter, that result would not create disrespect for the judicial system or " 'the perception that either the first or second court was misled.' "[39] Under these circumstances, it would be inappropriate to invoke judicial estoppel to bar Falkner's tort action.

We recognize that the Appellate Division of the New York Court of Appeals has rejected the position we take here. In *Cumberland Pharmacy, Inc. v. Blum*[40] and *Merchants Mutual Insurance Co. v. Arzillo*[41] the Appellate Division held that a *Serrano*[42] plea, New York's equivalent of an *Alford* plea, was as binding "as any admission of the facts consti-

---

clearly inconsistent; (4) the parties and questions must be the same; (5) the party claiming estoppel must have been misled and have changed his position; (6) it must appear unjust to one party to permit the other to change."
*Raymond*, 47 Wn. App. at 785 (quoting *Markley*, 31 Wn.2d at 614-15) (emphasis omitted). In *New Hampshire v. Maine*, the Supreme Court listed several factors that "typically inform the decision whether to apply the doctrine in a particular case:" (1) clear inconsistency between the party's earlier and later positions, (2) the party's success in convincing the court to accept its position in the earlier litigations; and (3) an unfair detriment to the opposing party from allowing assertion of the inconsistent positions. 532 U.S. at 750.

[37] *Id.* at 751.

[38] *Id.*; *Raymond*, 47 Wn. App. at 785.

[39] *New Hampshire*, 532 U.S. at 750 (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982)). We also note that allowing the suit to proceed would not prejudice Foshaug because he was not a party to the *Alford* plea and has not been misled or changed positions to his detriment in reliance on it. For the same reasons, equitable estoppel is also inapplicable here. *Henderson Homes, Inc. v. City of Bothell*, 124 Wn.2d 240, 248-49, 877 P.2d 176 (1994).

[40] 415 N.Y.S.2d 898, 69 A.D.2d 903 (1979).

[41] 472 N.Y.S.2d 97, 98 A.D.2d 495 (1984).

[42] *People v. Serrano*, 15 N.Y.2d 304, 206 N.E.2d 330 (1965).

tuting the crime charged."[43] Consequently, a defendant who entered a *Serrano* plea "should not expect the courts to look behind convictions based on such pleas in order to relieve them from adverse civil consequences which may follow."[44] The court based its decisions on considerations of collateral and judicial estoppel which, for the reasons discussed above, we conclude do not apply under these circumstances. We therefore do not find *Blum* or *Arzillo* persuasive.

We reverse the trial court and remand the case for further proceedings consistent with this opinion.

WEBSTER and BECKER, JJ., concur.

---

[43] *Blum*, 415 N.Y.S.2d at 900.

[44] *Arzillo*, 472 N.Y.S.2d at 105.