76 P.3d 787 (2003)
Jessy A. ANG, M.D., and Editha A. Ang, husband and wife; and Evergreen Medical Panel, Inc., a Washington Corporation, Appellants,
v.
Michael G. MARTIN and Jane Doe Martin, his wife, and the marital community comprised thereof; and Richard Hansen and Jane Doe Hansen, his wife, and the marital community comprised thereof, Respondents.
No. 28389-1-II.
Court of Appeals of Washington, Division 2.
September 23, 2003.
*788 Christopher Holm Howard, Holland Knight LLP, Sam Breazeale Franklin, Lee Smart Cook Martin & Patterson, Seattle, WA, for Respondents.
Robert B. Gould, Attorney at Law, Seattle, WA, for Appellants.
SEINFELD, J.
Jessy and Editha Ang sued their former attorneys, Michael G. Martin and Richard Hansen, for legal malpractice and violations of the Consumer Protection Act (CPA). The allegations arose out of Martin and Hansen's *789 representation of the Angs on federal charges that had resulted in an acquittal. In this case, the trial court dismissed the legal malpractice action after the Angs failed to prove that they were innocent of the charged federal crime. Holding that proof of actual innocence is an essential element of legal malpractice for deficient conduct in a criminal trial, and finding no reversible error, we affirm.

FACTS
Dr. Jessy Ang, a psychiatrist, and his wife Editha own Evergreen Medical Panel, which evaluates injured workers for the Washington State Department of Labor and Industries (L & I). A federal investigation of financial wrongdoing led to the execution of a search warrant for Jessy Ang's office.
During the search, an Internal Revenue Service (IRS) agent discovered copies of the Angs' tax returns and income statements for the mid 1980s to the early 1990s. There were two copies for each year, one was a set filed with the IRS and the other was a set that had been furnished to banks for loan applications. The IRS copies reported significantly lower adjusted gross income figures than those listed on the bank copies.
Faced with possible federal prosecution, Jessy Ang hired Richard Hansen to represent him for a flat fee of $225,000. And Editha Ang hired Michael Martin for a flat fee of $100,000.
A grand jury indicted the Angs on 18 counts, including conspiracy, bank fraud, false statements, and tax fraud. Martin and Hansen arranged a plea agreement with the federal prosecutor, Assistant U.S. Attorney Steve Schroeder. But the Angs rejected Martin and Hansen's proposed plea agreement and instead they proceeded to trial.
After the United States presented its case, Schroeder offered the Angs another plea agreement, which they reluctantly accepted. As a result of the plea, at least in part, L & I revoked Evergreen Medical Panel's qualified provider status.
The Angs contacted attorney Monte Hester for a second opinion as to whether they should have pleaded guilty. Hester reviewed the trial transcript and concluded that the plea offered them no material benefit over going to trial.
The Angs terminated Martin and Hansen, hired Hester and Keith McFie to represent them, and withdrew their guilty plea. They waived their right to a jury trial, proceeded before the federal trial court, and were acquitted.
The Angs sued Martin and Hansen for legal malpractice and violations of the Consumer Protection Act (CPA). They also argued, apparently under their CPA claim, that the terms of Martin's fee agreement with Editha were unsettled. In addition to other damages, the Angs sought disgorgement of the fees that they had paid to Martin and Hansen. The trial court dismissed the CPA claim and denied the request for disgorgement without sending those questions to the jury. It allowed the legal malpractice claim to proceed.
At trial, Editha Ang's brother Benjamin Almeda testified about a conversation he had with Hansen in the courthouse parking lot after the Angs pleaded guilty. Almeda testified that he told Hansen that he overheard the federal trial jury say they would not have found Jessy Ang guilty.
Later, Schroeder testified that several jurors told him they believed the Angs were guilty. Over the Angs' hearsay objection, the trial court admitted Schroeder's testimony but gave the jury a limiting instruction.
The trial court ruled that the Angs needed to prove to the jury by a preponderance of the evidence that they were not guilty of the federal crimes charged in order to prevail on their legal malpractice claim. But after Martin and Hansen presented evidence of their guilt, including the seized tax returns and income statements, the jury found that the Angs had failed to prove their innocence, and the trial court subsequently dismissed their legal malpractice claim.
The Angs appeal, arguing that (1) the trial court erred by submitting the question of their innocence to the jury because the acquittal conclusively established innocence; (2) Schroeder's testimony was inadmissible *790 hearsay and prejudicial to their case; (3) the trial court improperly advised the jury to disregard the instructions on the verdict form; and (4) the trial court erred by declining to have the jury determine the terms of Martin's fee agreement and the disgorgement issue.

DISCUSSION
I. Proof of Innocence
The Angs claim that the trial court erred by submitting the question of their innocence to the jury. They argue that proof they had been acquitted at their criminal trial proved, as a matter of law, their innocence in the malpractice action.
To succeed on a claim of legal malpractice allegedly occurring in a criminal trial, a plaintiff must prove "at a civil trial that he or she is innocent of the charged crime" and must do so by a preponderance of the evidence. Falkner v. Foshaug, 108 Wash. App. 113, 119, 29 P.3d 771 (2001) (emphasis added). We hold that this requires the plaintiff to prove innocence in fact and not merely to present evidence of the government's inability to prove guilt.
There are sound policy reasons for the proof of innocence requirement, namely
prohibit[ing] criminals from benefiting from their own bad acts, maintain[ing] respect for our criminal justice system's procedural protections, remov[ing] the "harmful chilling effect" on the defense bar, prevent[ing] suits from criminals who "may be guilty, [but] ... could have gotten a better deal," and prevent[ing] a flood of nuisance litigation.
Falkner, 108 Wash.App. at 123-24, 29 P.3d 771 (citation omitted). Proof of innocence in fact more appropriately furthers these policies. And the Angs' acquittal on the criminal charges did not prove their innocence in fact, "it merely prove[d] the existence of a reasonable doubt as to [their] guilt." United States v. One Assortment of 89 Firearms, 465 U.S. 354, 361, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984).
In 89 Firearms, a jury apparently accepted the defendant's entrapment defense and acquitted the defendant of charges that he knowingly dealt in firearms without a license. 465 U.S. at 355-56, 104 S.Ct. 1099. In the government's subsequent civil action for forfeiture of the seized firearms, the defendant asserted the defenses of collateral estoppel and res judicata. 89 Firearms, 465 U.S. at 356, 104 S.Ct. 1099. The District Court rejected the defenses and ordered forfeiture. The U.S. Supreme Court agreed, reasoning that

the jury verdict in the criminal action did not negate the possibility that a preponderance of the evidence could show that Mulcahey was engaged in an unlicensed firearms business. Mulcahey's acquittal on charges brought under § 922(a)(1) therefore does not estop the Government from proving in a civil proceeding that the firearms should be forfeited pursuant to § 924(d). It is clear that the difference in the relative burdens of proof in the criminal and civil actions precludes the application of the doctrine of collateral estoppel.

89 Firearms, 465 U.S. at 362, 104 S.Ct. 1099 (emphasis added).
Similarly, the court in United States v. Watts noted that "`[a]n acquittal is not a finding of any fact. An acquittal can only be an acknowledgment that the government failed to prove an essential element of the offense beyond a reasonable doubt.'" 519 U.S. 148, 155, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (quoting United States v. Putra, 78 F.3d 1386, 1394 (9th Cir.1996)).
The Angs also complain that the jury did not have "adequate instructions for the jury to measure, by way of Federal criminal law, [the Angs'] guilt or innocence." Reply Br. of Appellant at 9. But Martin and Hansen introduced as exhibits the proposed jury instructions from the Angs' federal criminal trial, which described the elements of the charged crimes. Further, the Angs did not assign error to the trial court's instructions to the jury or describe such an argument as an issue pertaining to their assignments of error as required under RAP 10.3(a)(3) and (5).[1]
*791 The Angs argue that a requirement that they relitigate their innocence violates the doctrine of judicial estoppel as enunciated by Falkner. Falkner described the doctrine as "[p]reventing `perversion of the judicial process' by not allowing parties to `gain an advantage by litigation on one theory, and then seek[ing] an inconsistent advantage by pursuing an incompatible theory.'" Falkner, 108 Wash.App. at 124, 29 P.3d 771 (citations omitted).
Robert Falkner pleaded guilty, using an Alford[2] plea and maintaining his innocence; he then brought a legal malpractice action in which he sought to relitigate his innocence. Falkner, 108 Wash.App. at 116, 29 P.3d 771. The Falkner Court held that judicial estoppel did not prevent Falkner from relitigating his innocence even though he had pleaded guilty. 108 Wash.App. at 125, 29 P.3d 771.
In contrast to Falkner, here the Angs seek to employ judicial estoppel to limit the defense. Further, the facts and legal issues here are substantially different from those in Falkner. Most significantly, this case does not involve a defendant's effort to deny the plaintiff in a civil case the opportunity to prove his innocence. The Angs had this opportunity; the question is what constitutes proof of innocence.
Lastly, the Angs argue that the question of their innocence is an affirmative defense and, thus, that Martin and Hansen had the burden of proving the Ang's guilt. They rely on Shaw v. State Dep't of Admin., 861 P.2d 566 (1993), an Alaska case. But Falkner, which cites Washington policy concerns, is more persuasive and it places the burden on the plaintiff to prove his innocence. 108 Wash. App. at 119, 29 P.3d 771 ("To satisfy the innocence requirement, the plaintiff must prove at a civil trial that he or she is innocent of the charged crime.").
Thus, the court did not err in failing to place the burden on Martin and Hansen to prove the Angs' guilt.
II. Hearsay
Almeda, Editha Ang's brother, testified that after the Angs pleaded guilty, he told Hansen that he heard the jury say they "could not find anything on Jessy." XIV Report of Proceedings (RP) at 1664. In response to Martin and Hansen's hearsay objection, the Angs argued that they were offering Almeda's comment as background for another statement from Hansen to Almeda, not to prove the truth of the matter asserted.
The trial court allowed Almeda's testimony and he then testified: "I said, Mr. Hansen, I want you to know that, you know, I was listening right there in the jury and the majority of the jury cannot find anything on Jessy. And then Mr. Hansen shook his head, he looked very depressed and he said I should not have pleaded guilty for Jessy." XIV RP at 1665. Ruling that Almeda's testimony had opened the door, the trial court later allowed Schroeder to testify over the Angs' objection that "[s]everal of the jurors indicated to me that they believed both of the defendants were guilty." XVIII RP at 2380.
The Angs contend that Schroeder's testimony was prejudicial hearsay. Martin and Hansen respond that they offered Schroeder's testimony to challenge Almeda's credibility, not to prove the truth of the matter asserted.
"`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). If evidence is offered for a purpose other than to prove the truth of the matter asserted, it is not hearsay. Patterson v. Kennewick Pub. Hosp. Dist. No.1, 57 Wash. App. 739, 744, 790 P.2d 195 (1990). For Schroeder's testimony to impeach Almeda, a trier of fact would need to believe that some jurors had said that they would find the Angs guiltythe matter asserted. Clearly the purpose of Schroeder's testimony was to *792 prove that the jury did not say that they were going to acquit the Angs.
Further, Schroeder's testimony does not directly contradict Almeda's credibility. Schroeder testified that "[s]everal of the jurors" believed that the Angs were guilty whereas Almeda testified that "the majority of the jury" believed that Jessy Ang was not guilty. XVIII RP at 2380; XIV RP at 1665. Schroeder may have been speaking about the dissenting jurors. Thus, his testimony was relevant only for its truth and was hearsay. See Henderson v. Tyrrell, 80 Wash.App. 592, 620, 910 P.2d 522 (1996).
But a party may open the door to otherwise inadmissible hearsay. State v. Avendano-Lopez, 79 Wash.App. 706, 714, 904 P.2d 324 (1995). "[W]hen a party opens up a subject of inquiry on direct or cross-examination, he contemplates that the rules will permit cross-examination or redirect examination, as the case may be, within the scope of the examination in which the subject matter was first introduced." State v. Gefeller, 76 Wash.2d 449, 455, 458 P.2d 17 (1969).
The trial court has considerable discretion in administering this open-door rule. 5 WASHINGTON PRACTICE, EVIDENCE § 103.14 (4th ed.). The rule is aimed at fairness and truth-seeking:
It would be a curious rule of evidence which allowed one party to bring up a subject, drop it at a point where it might appear advantageous to him, and then bar the other party from all further inquiries about it. Rules of evidence are designed to aid in establishing the truth. To close the door after receiving only a part of the evidence not only leaves the matter suspended in air at a point markedly advantageous to the party who opened the door, but might well limit the proof to half-truths.
Gefeller, 76 Wash.2d at 455, 458 P.2d 17.
Here, when the Angs objected to Schroeder's testimony, Martin and Hansen argued that Almeda's testimony opened the door because its relevance as background for Hansen's statement was minimal. In overruling the Angs' objection, the trial court noted that the Angs could have solicited Hansen's statement by simply asking Almeda: "did [you] talk to Hansen afterwards? Yes. What did Hansen say? I'm sorry. I made a mistake of pleading the Angs guilty." XVIII RP at 2376.
And the trial court recognized the prejudicial effect of Almeda's testimony about the criminal jury's reaction to the evidence: "[W]hat that jury was or was not going to do to these people speaks to and concerns me with respect to the direct issue to go to the jury, and that is proof of innocence, upon which the plaintiff has the preponderance burden." XVIII RP at 2373. The court continued:
[Almeda's testimony] is a reasonably significant statement, reasonably significant admission; a statement to the jury as to what the federal jury was doing.
In fairness to the defendants, because this door was opened and could have been elicited; that is, the testimony of Hansen or statement of Hansen without saying what the jurors said, I felt in order to keep a fair playing field here that the other side could mention the same thing, too, as to guilt or innocence.
XIX RP at 2435.
To close the door on the subject of the criminal jury's possible verdict because it came in the form of hearsay would give the Angs an unfair advantage and limit the proof to half-truths. See Gefeller, 76 Wash.2d at 455, 458 P.2d 17. Because the Angs opened up the subject of the possible verdict, the trial court did not abuse its considerable discretion in permitting further questioning on that topic, even if it necessitated admitting hearsay.
III. Jury Verdict Form
Questions 1 and 2 on the verdict form asked whether Jessy and Editha Ang each proved his or her innocence by a preponderance of the evidence. This was followed by a statement: "If you answered Question Nos. 1 and 2 `yes' as to either Nos. 1 or 2, proceed to Question No. 3. If you answered Question Nos. 1 and 2 `no', sign and return this verdict." Clerk's Papers *793 (CP) at 1664. Question 3 asked whether Martin or Hansen were negligent.
The jury answered "no" to questions 1 and 2. CP at 1663-64. Nonetheless, the trial court then asked the jury over the Angs' objection to answer question 3. The court stated that it wanted to reduce the possibility of a new trial in the event that a reviewing court determined it was error to require the Angs to prove their innocence to the jury. The jury deliberated further and found that Hansen was not negligent but that Martin was.
The Angs claim that the court acted improperly by ordering the jury to answer question 3 and to disregard the instructions in the verdict form. But even assuming error, the Angs fail to show that requiring the jury to consider negligence after it found that the Angs failed to prove their innocence caused them prejudice. Accordingly, the Angs are not entitled to relief. See Nelson v. Mueller, 85 Wash.2d 234, 236-37, 533 P.2d 383 (1975) (appellant not entitled to relief when he failed to show that erroneous jury instruction prejudiced his case).
IV. Disgorgement of Fees
The trial court ruled that Martin and Hansen need not disgorge the attorney fees they received from the Angs; it did not send the question to the jury. The Angs argue that this should have been a jury question.
The cases that the Angs cite do not support their argument. See Eriks v. Denver, 118 Wash.2d 451, 824 P.2d 1207 (1992); Ross v. Scannell, 97 Wash.2d 598, 647 P.2d 1004 (1982). In Eriks, the holding was to the contrary, and Ross did not address the question.
In Eriks, investors in a tax shelter scheme sued Denver, an attorney, for violating the Code of Professional Responsibility. 118 Wash.2d at 453-54, 824 P.2d 1207. On appeal, Denver argued that there was a genuine issue of material fact as to whether he violated the Code. Eriks, 118 Wash.2d at 456-67, 824 P.2d 1207. Upholding summary judgment against Denver, the court held that whether an attorney has violated the Rules of Professional Conduct is a question of law to be decided by the trial court. Eriks, 118 Wash.2d at 457-58, 824 P.2d 1207. The court then affirmed the trial court's order requiring Denver to disgorge fees as a reasonable way to discipline specific breaches of professional responsibility and within the inherent power of the trial court to fashion judgments. Eriks, 118 Wash.2d at 463, 824 P.2d 1207 (citation omitted).
The Ross court merely noted that "[p]rofessional misconduct may be grounds for denying an attorney his fees," without designating whether the question is one for the jury. 97 Wash.2d at 610, 647 P.2d 1004. Thus, this case is of no assistance to the Angs. Finally, because the Angs failed to establish the merits of their case, they were not entitled to disgorgement in any event. Thus, this contention lacks merit.
V. Martin's Fee Agreement
Citing Ward v. Richards & Rossano, Inc., 51 Wash.App. 423, 754 P.2d 120 (1988), the Angs appear to argue that the jury should have had the opportunity to determine the proper fee agreement between Editha Ang and Martin. Although the Angs' argument is unclear, we understand that they are contending that (1) Editha Ang and Martin formed an attorney/client relationship, including a fee agreement; (2) Martin modified the terms of the fee agreement; (3) it is unclear whether the fee agreement provided for a flat fee or per-hour billing; and, thus, (4) under Ward, the trial court erred in not presenting this issue to the jury.
Ward involved a disputed contingent fee agreement. 51 Wash.App. at 425, 754 P.2d 120. The client agreed to pay her attorneys "40% of any and all amounts recovered in any manner." Ward, 51 Wash.App. at 425, 754 P.2d 120. After a jury awarded the client $1,100,000, her attorneys renegotiated a new fee agreement that raised the fee to 50 percent of the award in the event of an appeal. Ward, 51 Wash.App. at 426, 754 P.2d 120.
After the judgment was appealed and affirmed, the attorneys retained their 50 percent fee. Ward, 51 Wash.App. at 427, 754 P.2d 120. The client then sued, contesting the validity of the 50 percent contingency *794 agreement. Ward, 51 Wash.App. at 427, 754 P.2d 120.
The trial court granted the attorneys summary judgment, finding an accord and satisfaction. Ward, 51 Wash.App. at 427, 754 P.2d 120. But the Court of Appeals reversed, finding genuine issues of material fact as to whether the agreement constituted an accord. Ward, 51 Wash.App. at 430, 754 P.2d 120. The Ward Court noted that
Review of an attorney's fee agreement renegotiated after the attorney-client relationship was established requires particular attention and scrutiny. Such a modification is considered to be void or voidable until the attorney establishes "that the contract with his client was fair and reasonable, free from undue influence, and made after a fair and full disclosure of the facts upon which it is predicated."
51 Wash.App. at 428-29, 754 P.2d 120 (citations omitted).
The Angs cite three letters from Martin to the Angs and one from Editha Ang to Martin, apparently to show that Martin modified the fee agreement and that its terms were unclear. In an April 9, 1997 letter, Martin proposed a $100,000 flat fee for his services, which he would reduce to $75,000 if he obtained dismissal of the indictment within three months of charging. The letter also stated that if he failed to obtain dismissal but the case settled short of trial, he would be "amenable to discussing a reduction of the fee." Exhibit 3.
A second letter, dated April 17, 1997, stated: "Please accept this letter as my acknowledgement that I have received the entire fee of $100,000.00. I will file [sic] now prepare a notice to file with the court that I am Editha's new attorney." Exhibit 4. But Martin clarified that if the case settled short of trial, he would not reduce the fee any more than $45,000.
A third letter, dated April 21, 1997, merely purported to deliver a copy of the notice of appearance Martin filed on behalf of Editha Ang. A fourth letter, also dated April 21, 1997, was sent by Editha Ang to Martin proposing either reducing the flat fee or changing to a per-hour fee. She stated: "Until such flat fee agreement can be reached, we would like to be billed on an hourly basis." Exhibit 46.
The Ward rule deals with the enforceability of an attorney's modification of a fee agreement, not with a client's attempted modification. 51 Wash.App. at 426, 754 P.2d 120; see also Perez v. Pappas, 98 Wash.2d 835, 840-41, 659 P.2d 475 (1983) (In renegotiating a fee, "an attorney must continually be aware that the attorney-client relationship is a fiduciary one as a matter of law and thus the attorney owes the highest duty to the client."). Thus, Ward is not applicable.
Here, Martin's second letter mentions that Martin received $100,000 from the Angs, suggesting that the parties had agreed to the flat fee agreement at that point.[3]See Knight v. Seattle First Nat'l Bank, 22 Wash.App. 493, 496, 589 P.2d 1279 (1979) (a party's performance may constitute acceptance of an offer to contract). Only the fourth letter, from Editha to Martin, sought to reduce the flat fee or alter the flat fee to a per-hour fee.
Further, Ward stands for the proposition that the court will scrutinize fee modifications occurring after the establishment of the attorney-client relationship and initially presume them to be void or voidable; this generally leaves the original contract as the one governing the fee arrangement. Ward, 51 Wash.App. at 428-29, 754 P.2d 120. Thus, even were we to apply Ward to a client's modification of a fee agreement, it would suggest that the original flat fee agreement still governs.
Consequently, the Angs have not shown that the trial court erred in not having the jury decide the issue of Martin's fee.
Accordingly, we affirm.
We concur: HOUGHTON, J., and HUNT, C.J.
NOTES
[1] Under RAP 10.3(a)(3) and (5), an appellant's opening brief should contain "[a] separate concise statement of each error ... the issues pertaining to the assignments of error" and "argument in support of the issues presented for review, together with citations to legal authority."
[2] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
[3] In their complaint, the Angs conceded that "[t]he fee agreement ultimately reached between Martin and Editha provided for a flat fee of $100,000; $3,000 of which was to cover costs." CP at 6.