IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CHRISTOPHER T. DAVIS, | ) | |
| | ) | No. 33010-9-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THURSTON COUNTY; THURSTON | ) | UNPUBLISHED OPINION |
| COUNTY OFFICE OF ASSIGNED | ) | |
| COUNSEL; SALLY HARRISON, | ) | |
| individually and in her official capacity; | ) | |
| "JOHN DOE" HARRISON, husband and | ) | |
| wife and the marital community | ) | |
| comprised thereof; JAMES K. GAZORI | ) | |
| and "JANE DOE" GAZORI, husband and | ) | |
| wife, and the marital community | ) | |
| comprised thereof, et al, | ) | |
| | ) | |
| Respondent. | ) | |

FEARING, J. — The State of Washington charged Christopher Davis with second

degree rape, and Davis later pled to assault in the third degree without a designation of a

sex crime. During the course of the prosecution, private defense counsel represented

Davis, but the Thurston County Office of Assigned Counsel (OAC) paid expert expenses

because of Davis' indigency. Davis now sues OAC and its former Director Sally

Harrison, claiming that OAC failed to approve sufficient funds for his defense. He insists he would not have pled to the lesser crime if OAC approved the needed funds. Because Davis provides no testimony that OAC denied needed funds and no testimony that the approval of additional funds to defray expert costs would have changed the outcome of his prosecution, we affirm the summary judgment dismissal of all of his claims.

## FACTS

Since defendants Sally Harrison and Thurston County prevailed on summary judgment, we recite the facts in a light most favorable to Christopher Davis.

In January 28, 2009, the State charged Christopher Davis with rape in the second degree, under RCW 9A.44.050(1)(b), for allegedly raping a woman as she lay intoxicated and unconscious. Davis maintains he was falsely accused of rape. On February 19, Davis was arraigned on the charge and preliminarily determined indigent.

The Thurston County OAC provides legal representation to the indigent in criminal and dependency cases in Thurston County District Court and Superior Court. OAC assigned James Shackleton as Christopher Davis' counsel, and OAC notified Davis of the assignment on March 4, 2009. OAC Director Sally Harrison filed a notice of appearance on Shackleton's behalf the next day.

On March 26, 2009, Christopher Davis' parents retained, on Davis' behalf, James Gazori, a private defense attorney. The attorney retainer and fee agreement read that Davis' parents would pay Gazori $12,500 "for representation only." Clerk's Papers (CP)

at 122. The parents refused to cover "additional expenses," such as "expert witness fees, deposition fees, [and] transcription fees." CP at 122. On March 26, Gazori substituted as Davis' counsel.

On May 11, 2009, Christopher Davis, through James Gazori, petitioned the court for an order approving payment by OAC of $3,000 to retain the services of Dr. Robert Julien, of Lake Oswego, Oregon, to testify as an expert witness in the case. Julien would testify about the victim's ability or lack of ability to remember events when intoxicated. The court signed an order authorizing payment for such services in a sum not exceeding $3,000. The trial court never revoked the order.

On May 14, 2009, Sally Harrison learned of the court order, and she e-mailed James Gazori to inform him that she would ask the judge to revoke the order. Harrison complained that Gazori had failed to obtain advance approval from OAC of the costs. She attached to the e-mail a document explaining OAC's procedure for approving non-attorney costs for indigent clients. Harrison also notified Gazori that OAC's budget was "stretched extremely thin" and she may ask him to procure an expert closer to Olympia and one that would charge less. CP at 146. Thurston County Local Criminal Court Rule (LCrR) 3.1(f)(2) empowered the OAC Director to render such a determination. The local rule reads:

> The Director of the Office of Assigned Counsel shall authorize assigned counsel to obtain services provided for under CrR 3.1(f) on behalf of a defendant upon a showing that the services are necessary and that the

3

defendant is financially unable to obtain these services. This authorization shall be obtained prior to the procurement of the necessary services.

CP at 39-40.

On May 20, 2009, James Gazori requested $400 from OAC for the services of investigator Frank Wilson. By May 20, Christopher Davis had yet to complete the required indigency screening form. On May 29, 2009, OAC received the screening form. On June 2, James Gazori submitted a request to OAC for $3,000 for Robert Julien to review the case file, consult, and testify if necessary. On June 3, Sally Harrison approved $900 for the services of Julien, noting on the request form: "This is all I can approve at this time. (6 hours)." CP at 52.

On June 12, 2009, OAC Director Sally Harrison filed a notice of withdrawal of counsel on behalf of OAC's James Shackleton. On June 18, 2009, OAC received a request from James Gazori for an additional $1,000 for Frank Wilson's investigative services.

On June 24, 2009, Sally Harrison notified James Gazori by letter regarding his request for investigator funds:

> I received a request for $1000 for the services of investigator Frank Wilson in the above case. As you know, I previously approved $900 for Dr. Julien.
> You had requested $400 for Mr. Wilson in a form I received on 5/20/09. That amount was never approved as it had been submitted before any indigency screening.
> Since Mr. Davis has been found indigent and eligible for non-attorney professional services, I can authorize an amount for investigation.

4

That amount will be for work done after the date of this letter, or June 24, 2009.

CP at 207.

On July 2, 2009, James Gazori requested that OAC approve $1,150: $800 for Sue Batson to conduct a psychosexual evaluation of Christopher Davis, and $350 to administer a polygraph of Davis. Gazori's request added: "If the results of Ms. Batson's evaluation are as expected, there will be no need to request further funds for Dr. Julien." CP at 53. In a declaration supporting her summary judgment motion, Sally Harrison averred that she asked Gazori if Christopher Davis' parents could pay for the polygraph examination, and Gazori responded that the parents would contribute $250. In her declaration, Harrison added that she

> routinely make[s] this request to attorneys, both OAC employed and private, requesting funding for a polygraph exam. However, if a family could not afford to contribute towards the cost of the polygraph exam, I would never deny payment.

CP at 43.

On July 13, 2009, OAC Director Sally Harrison received another letter from James Gazori, in which he explained that his request for funds for Sue Batson was not in the alternative to funds for Robert Julien because Julien's work exceeded the amount reimbursed at that point. Gazori further explained that the services of Julien and Batson were different in nature. As of July 14, Harrison believed Julien had performed $675 worth of services. Gazori requested a personal meeting with Sally Harrison in order to

5

discuss the need for the expert services without creating a written public record that would expose attorney work product and reveal the nature of anticipated defenses in the case. Harrison and Gazori met on July 14. The record does not disclose the discussions during the meeting or whether Harrison approved any expenses during the meeting.

On July 17, 2009, Sally Harrison approved $800 for Christopher Davis' psychosexual evaluation by Sue Batson, but based on an assumption that Robert Julien would only be paid $675. Harrison believed then that future services from Julien was only a possibility. On July 17, Harrison also approved $100 for a polygraph examination. The approval sheet noted that Davis' parents would pay the other $250 for the examination.

On July 20, 2009, Christopher Davis filed a motion to compel OAC to authorize funds pursuant to CrR 3.1(f). In the motion, Davis alleged that OAC deprived him of due process because the delay in funding necessitated he waive his right to a speedy trial several times. He sought authorization for $5,675 to cover costs already incurred and those anticipated in the future for employing the services of Robert Julien, Sue Batson, and Frank Wilson, the private investigator. Sally Harrison answered the motion by stating she would approve additional funding if Davis requested the funds rather than seeking a court order to compel funding. The trial court denied Davis' motion to compel funding. James Gazori testified that the filing and the argument of the motion to compel authorization to pay funds created hostility between Sally Harrison, on the one hand, and

6

Christopher Davis and him, on the other hand.

On September 10, 2009, Christopher Davis entered an *Alford* plea of guilty to one count of third degree assault, characterized as a non-sex offense. In exchange, the State agreed to dismiss the charge of rape in the second degree. In a deposition, criminal defense counsel James Gazori testified that the plea of third degree assault was "absolutely" a good outcome for Davis. CP at 89. According to Gazori, Davis faced "substantial time" if convicted of rape. CP at 89. By the plea agreement, Davis avoided sexual offender registration.

James Gazori testified that he would have called Robert Julien to testify at trial on the rape charges, subject to additional approval of funds. Gazori agreed that Sally Harrison never stated she would not approve the additional funding for services of Julien. Gazori never needed to seek approval of additional funding because of the plea agreement.

In his deposition, Christopher Davis testified that he denied the charge of rape in second degree. In his affidavit opposing the summary judgment motion, Davis stated that, if additional funding "for the expert" had been approved, he would have opted to reject the plea agreement and go to trial. CP at 125. In his deposition, Davis declared that he did not commit the crime of third degree assault.

The trial court sentenced Davis to 22 months' confinement and ordered him to pay $1,475 in legal financial obligations, including $675 to be paid to Thurston County OAC.

Davis served 16 of the 22 month sentence.

## PROCEDURE

On August 17, 2012, Christopher Davis filed suit against Thurston County, Thurston County OAC, OAC Director Sally Harrison, and James Gazori. We treat Thurston County and OAC as the same defendant. Davis alleged professional malpractice, breach of fiduciary duty, and violation of the Washington Consumer Protection Act (CPA), chapter 19.86 RCW, against Sally Harrison. Davis asserted negligence against Thurston County.

Thurston County and Sally Harrison moved for summary judgment on all claims, arguing that no attorney-client relationship existed between Christopher Davis and Harrison, that Davis could not show causation in his claims against Harrison, and that Davis could not prove proximate cause as to his claim for negligence against the county. Davis requested a continuance of the summary judgment motion in order to conduct discovery. The trial court denied Davis' motion for a continuance and granted Thurston County's and Sally Harrison's motions for summary judgment on all claims. Davis does not assign error, on appeal, to the denial of the motion for a continuance.

## LAW AND ANALYSIS

On appeal, Christopher Davis argues: (1) an attorney-client relationship existed between him and Sally Harrison and did not terminate upon James Gazori substituting as his counsel, (2) he did not need to establish his innocence or show a postconviction

8

finding of innocence in order to prevail on his claims of legal malpractice and breach of fiduciary duty, (3) he holds a valid claim against Harrison under Washington's CPA, and (4) he presented facts showing proximate cause on his negligence claim against Thurston County. In their response, Thurston County and Sally Harrison raise quasi-judicial immunity as a defense, in addition to refuting all of Davis' contentions. We review a summary judgment order de novo, engaging in the same inquiry as the trial court. *Columbia Cmty. Bank v. Newman Park, LLC*, 177 Wn.2d 566, 573, 304 P.3d 472 (2013).

This appeal raises many interesting and difficult questions, most of which the parties address in their appeal briefs. The queries include: what duty, if any, does a county public defender office have to fund expenses for expert witnesses when an indigent defendant hires a private attorney? Does an attorney-client relationship exist between an indigent criminal defendant, on the one hand, and the public defender office and its administrator, on the other hand, after the defendant hires a private attorney? Does such a relationship continue to exist after the hiring of a private attorney if the public defender earlier represented the criminal defendant? Does a conflict of interest arise when a public defender office represents as legal counsel an indigent defendant while also screening costs for expert witnesses on a limited budget controlled by the county? What duty, if any, does the director of a public defender office hold when determining whether to allocate limited funds to cover expert expenses to defend a prosecution? Does a consumer relationship exist, for purposes of the CPA, between an

indigent defendant and a public defender office? Is a director of a public defender office entitled to immunity from civil suit when sued in her role of allocating limited funds for the defense of criminal prosecutions? We avoid these challenging issues by resolving the appeal on easier grounds. We list the questions in order to identify the issues for the reader and to inform the reader that the opinion provides no answer to the questions.

As former trial attorneys, we know the vagaries of jury trials and understand that one charged with second degree rape receives an excellent result when his defense attorney procures a plea agreement for third degree assault without reference to a sexual assault. Such a plea frees the accused from registering as a sex offender. We also recognize that a criminal accused sometimes pleads guilty to a lesser crime, despite being innocent of all crimes, in order to avoid the caprice of a jury. Nevertheless, the accused and others assisting in his defense cannot be blamed for this unfortunate feature of the criminal justice system.

We base our decision on the undisputed evidence that OAC did not deny additional approval of funds needed to successfully defend any charges. Christopher Davis also forwarded no evidence that the outcome of his prosecution would have ended differently if OAC allocated additional funding. More importantly, he has shown no postconviction challenge to his plea of guilty to third degree assault. Therefore, he lacks evidence to survive a summary judgment motion on causation, an essential element of each of his claims against OAC and Sally Harrison.

A legal malpractice claim requires proof of an attorney-client relationship creating a duty of care, breach of that duty, damage, and proximate cause. *Hizey v. Carpenter*, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992). Proximate cause requires a plaintiff to prove both legal causation and cause in fact. *Lowman v. Wilbur*, 178 Wn.2d 165, 169, 309 P.3d 387 (2013). To establish cause in fact, a claimant must establish that the harm suffered would not have occurred but for an act or omission of the defendant. There must be a direct, unbroken sequence of events that link the actions of the defendant and the injury to the plaintiff. *Joyce v. Dep't of Corr.*, 155 Wn.2d 306, 322, 119 P.3d 825 (2005). Cause in fact is usually a question for the jury. *Joyce*, 155 Wn.2d at 322. But the court may decide this question as a matter of law if the causal connection is so speculative and indirect that reasonable minds could not differ. *Moore v. Hagge*, 158 Wn. App. 137, 148, 241 P.3d 787 (2010).

In cases alleging malpractice in the course of defending a client accused of a crime, Washington has joined the majority of courts who have imposed two additional requirements: a successful postconviction challenge and proof the plaintiff did not commit the underlying crime. *Falkner v. Foshaug*, 108 Wn. App. 113, 118, 29 P.3d 771 (2001).

In a legal malpractice suit for ineffective assistance of counsel during a criminal proceeding, the client must establish his innocence of the criminal charges even if he was acquitted at the conclusion of the criminal trial. *Ang v. Martin*, 118 Wn. App. 553, 558,

76 P.3d 787 (2003), *aff'd*, 154 Wn.2d 477, 114 P.3d 637 (2005); *Falkner v. Foshaug*, 108 Wn. App. at 119. The verdict of acquittal does not suffice because the jury could have acquitted the client because the State did not meet its burden of proof beyond a reasonable doubt despite the client committing the crime. *Ang v. Martin*, 118 Wn. App. at 559. The requirement of postconviction relief follows from the understanding that a criminal defendant is not harmed unless he first establishes that counsel failed to meet professional standards in a way that would make postconviction relief appropriate. *Falkner v. Foshaug*, 108 Wn. App. at 118; *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 497 (Tex. 1995); *Morgano v. Smith*, 110 Nev. 1025, 1029, 879 P.2d 735 (1994); *Stevens v. Bispham*, 316 Or. 221, 851 P.2d 556, 562 (1993). Unless the malpractice plaintiff's conviction has been overturned, the plaintiff's illegal conduct, not the negligence of his counsel, is the cause in fact of any injuries flowing from the conviction as a matter of law. *Peeler v. Hughes & Luce*, 909 S.W.2d at 498.

The parties argue whether Christopher Davis must establish his innocence of the charges of third degree assault in order to prevail on his claims. We do not address this issue since Davis testified that he was innocent. Although this testimony is conclusory in nature, we recognize the difficulty of proving the absence of a negative. Assuming Davis must establish his innocence, his curt testimony raised an issue of fact as to his innocence. We resolve the appeal on the ground that Christopher Davis has failed to obtain any postconviction relief from his conviction for third degree assault.

In the leading Washington decision, *Falkner v. Foshaug*, 108 Wn. App. 113 (2001), a jury convicted Robert Falkner of second degree murder for the death of his wife. This court overturned the conviction on the ground of ineffective assistance of counsel. Falkner hired new defense counsel for a second trial. The trial court declared a mistrial after the first witness in the second trial violated a pretrial evidentiary ruling. Before the trial court heard a motion to dismiss because of prosecutorial misconduct, Falkner entered an *Alford* plea to first degree manslaughter. He was released from jail because he had served more time in prison than the first degree manslaughter charge warranted. This court reversed a summary judgment order dismissing his malpractice claim against his first attorney. Although Falkner entered an *Alford* plea to the lesser charge, he sued over the wrongful conviction for second degree murder, from which he had obtained postconviction relief. Christopher Davis has not obtained postconviction relief from the only charge upon which he was convicted.

The want of postconviction relief equates to a failure to show causation of any damages from the purported malpractice of the criminal defense attorney. Davis has also failed to show causation in fact on other grounds. His evidence falls short of creating a genuine issue of material fact as to whether Sally Harrison denied expert witness funds needed for a successful defense. James Gazori accurately stated that the plea was an excellent result. Even assuming Harrison denied needed funds or delayed approval of funding, Davis cannot show that prompt payment or approval would have led to a better

13

result.

Christopher Davis also sues Sally Harrison for breach of fiduciary duty. A breach of a fiduciary duty claim requires the plaintiff to prove that the claimed breach was the proximate cause of the injury. *Hansen v. Friend*, 118 Wn.2d 476, 479, 824 P.2d 483 (1992); *Miller v. U.S. Bank of Wash., N.A.*, 72 Wn. App. 416, 426, 865 P.2d 536 (1994). The alleged breach of the fiduciary duty is the same conduct for which Davis sues for legal malpractice. Therefore, we affirm the summary judgment dismissal on the same ground that Davis presents no factual question of causation in fact.

Christopher Davis' claim under the CPA requires proof of injury to plaintiff in his business or property and causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). Christopher Davis' separate claim for negligence against Thurston County OAC also demands evidence of causation of damages. *Joyce v. Dep't of Corr.*, 155 Wn.2d at 322 (2005). We affirm the summary judgment dismissal of the negligence and CPA claims on the failure to present a question of fact on causation. Had Christopher Davis gone to trial in the criminal prosecution and been unable to call an expert witness due to Harrison's denial of additional funds, Davis would have a basis on which to challenge his possible conviction. The undisputed facts show that Davis had only accessed a portion of the funds allocated when he pled guilty. Davis' conclusory, unsubstantiated attempt to establish proximate cause fails.

No. 33010-9-III
*Davis v. Thurston County*

CONCLUSION

We affirm the trial court's summary judgment dismissal of all claims asserted by

Christopher Davis.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Brown, J.

15